## A. B. IRONS and Others v. INDEPENDENT SCHOOL DISTRICT NO. 2 and Others.[1]

July 26, 1912.

Nos. 17,684—(209).

**New school district — evidence.**

This appeal involves the formation of a new school district out of a portion of the territory of an independent district, and is from an order denying a motion for a new trial, after a finding by the jury to the effect that the best interests of the territory affected required the formation of the new district. *Held:*

1. The trial court did not err in its rulings as to the admission of evidence.

2. The question of when and under what conditions school districts may be organized, or their boundaries changed, is a legislative one, which has been qualifiedly delegated to the respective county boards of the state.

3. On an appeal to the district court from an order of the county board organizing a new school district, the question must be determined by a consideration of what is for the best interests, present and future, of the people of the territory, considered as a whole.

4. The finding of the jury is not so manifestly against the preponderance of the evidence as to justify the conclusion that the trial court abused its discretion in denying a new trial.

Appeal to the district court for Pine county by Independent School District No. 2 from an order of the board of county commissioners granting the petition of A. B. Irons and others for the formation of a new school district to be known as Common School District No. 93. The appeal was heard before Stolberg, J., who at the close of the evidence denied defendant's motion to direct a verdict in its favor, and a jury which returned a verdict in favor of petitioners, and found that the best interest of the territory affected required the formation of a new school district as prayed. From an order denying its motion for a new trial, Independent School District No. 2 appealed. Affirmed.

[1] Reported in 137 N. W. 303.

*J. F. McGee* and *William H. Lamson,* for appellant.

*S. G. L. Roberts, Harold Harris* and *Ottocar Sobotka,* for respondents.

START, C. J.

On May 15, 1911, a petition, approved by the county superintendent of schools, was filed with the county auditor of the county of Pine for the formation of a new school district, to be known as district No. 93, the territorial limits of which included township 41, range 18. Due notice of the time and place of hearing the petition was given, and it was heard on July 10, 1911. The board of county commissioners made its order, granting the petition. Thereupon Independent School District No. 2, from the territory of which that of district No. 93 was taken, appealed from the order to the district court of the county of Pine, on the ground that the county board had no jurisdiction to act, and that its action was against the best interests of the territory affected by the order. On the trial of the matter in the district court, the question whether the best interests of the territory affected required the formation of the new district was submitted to a jury, and a verdict was returned to the effect that such interests did require the formation of the district, and that the prayer of the petitioners be granted. The independent district then made a motion for a new trial on the grounds of errors of law, and that the verdict is not justified by the evidence, and is contrary to law. The motion was denied, and it appealed from the order.

The appellant here assigns as error the rulings of the trial court in sustaining objections to its three offers of evidence. Only one of such alleged errors is urged in the brief of counsel. The other two are deemed to have been waived by the omission to urge them in the brief; but, this aside, it is obvious that the rulings were correct. The other offer was to show what representations were made to the high school board to secure the selection of the village of Hinckley as the site and location of an agricultural school, and that they did represent that the assessed value of the property within the independent district, which included the territory of the village, was $480,000. It was not error to sustain the objection to this offer;

for it had only a remote, if any, relevance to the issue to be determined. The history of the efforts to secure the location of the agricultural school in the village of Hinckley would tend to confuse, rather than to aid, the jury in determining the question submitted to it.

The remaining assignments of error present the question whether the finding of the jury that the best interests of the territory to be affected thereby required the formation of the new district is so manifestly against the preponderance of the evidence as to justify the conclusion that the trial court, in the exercise of its discretion, ought to have granted the motion for a new trial. No question is here made as to the jurisdiction of the county board to hear and determine the petition, nor as to the regularity of the proceedings, culminating in the order establishing the new district. The contention is to the effect that the evidence and the facts which they tended to prove are undisputed, and that but one conclusion can be fairly drawn therefrom, namely, that the formation of the new district is against the best interests of the territory affected. There was but little conflict in the evidence tending to establish the evidentiary facts; but the controlling question is whether different minds might reasonably draw a different conclusion from them as to whether the formation of the new district would be against the best interests of the territory affected; that is, the people thereof. It will serve no practical purpose to burden the record with a statement of the evidence in detail. It is sufficient to indicate briefly the leading evidentiary facts which the evidence tends to establish.

Independent School District No. 2, in 1909, was designated by the state high school board as a proper one for an agricultural department, as provided by Laws 1909, p. 291, c. 247 [R. L. Supp. 1909, §§ 1342—15 to 1342—25]. It accepted the designation, purchased land, erected buildings and equipped them, employed trained instructors in agriculture and domestic science, and has ever since at the village of Hinckley, the seat of its government, successfully maintained and conducted one of the best agricultural and industrial schools in the state. Its entire educational system is open to all of

school age, within the limits of the district. It has also built a school-house and maintained a school in township 41, range 18. Its terri-torial limits originally included all of towns 41, 16, 17, 18, 19, 19½ sections of town 41—20, 9¼ sections of town 41—21. Since its organization, and before the formation of the district here in question, portions of its territory had been detached from it and annexed to three other districts, respectively, so that, excluding town 41, range 18, the territory of the new district, the territory of the appellant district now consists of fourteen sections in the north part of town-ship 41, range 19, 19½ sections in township 41, range 20, and 9¼ sections in township 41, range 21. The assessed value of the terri-tory of the proposed new district is $75,546, leaving the assessed value of the property of the appellant district only $220,000.

The distance from Hinckley to the territory of the new district is from eleven to seventeen miles, and the means of connection between them is primitive. Between them, there is a stretch of territory, some nine miles wide, which is practically unsettled. The number of persons of school age residing at present in the new district is limited; but it will increase in the near future, as its territory is being settled.

We have considered, not only the evidence, and evidentiary facts specially referred to, but the whole record, and have reached the con-clusion that the verdict is justified by the evidence. In reaching this conclusion, we are not unmindful of the fact that the creation of the new district will materially reduce, for a time at least, the revenues of the appellant district which will probably impair its ability, to some extent, to maintain the high standard of its agricul-tural school. This, however, is not a controlling consideration; for the rights and interest of territory, remote from the seat of govern-ment of the appellant district, ought not to be sacrificed for revenue. Whether new districts shall be organized out of any portion of the territory of an independent district which maintains an agricultural school is a question for the legislature. The determination of the question of when and under what conditions school districts may be organized, or their boundaries changed, is purely a legislative one, which has been qualifiedly delegated to the respective boards of

county commissioners of the state.   The statute (R. L. 1905, § 1282), conferring such power upon county boards, makes no exception of independent districts; but, on the contrary, it expressly includes them.

It follows that the formation of the new district here in question out of a part of the territory of an independent district maintaining an agricultural school cannot be held to be contrary to public policy; for that which the statute authorizes cannot be legally against public policy.   If the practical operation of the statute is a menace to the interests of rural agricultural schools, the remedy is by appeal to the legislature, not to the courts.   County boards, however, cannot arbitrarily organize a new school district from a portion of the territory of an existing one, but only when the best interests of the territory affected require it.   The statute [1] does not define the term, "the best interests of the territory;" but it is reasonably clear that it means the best interests of the people of the territory, as we say the best interests of the state, when we are speaking of the best interests of the people thereof.   What is for the best interests of the people of a particular territory is a practical, not a legal, question, the solution of which involves a consideration of the interests of the whole territory.   The interests of the most populous portion, or those of the sparsely settled and struggling portion, cannot be independently considered; for the interests of the strong can never be the measure of the rights of the weak.   The ultimate question is:   What do the best interests, present and future, of the people of the territory affected, considered as a whole, require?

We hold, upon a consideration of the whole record, that the verdict is not so manifestly against the preponderance of the evidence as to justify the conclusion that the trial court abused its discretion in denying a new trial.

Order affirmed.

[1] [R. L. 1905, § 1285]