## CONSOLIDATED SCHOOL DISTRICT NO. 24, OF COTTON-WOOD COUNTY AND ANOTHER v. A. O. STARK AND OTHERS.[1]

January 16, 1920.

No. 21,470.

**Detaching territory from consolidated school district — finding unsupported.**

Upon a consideration of the evidence presented in an appeal to the district court from an order of the county board detaching a portion of the territory of a consolidated school district and creating therefrom a common school district, it is *held* not to sustain a finding that the action of the county board was arbitrary, oppressive and in disregard of the best interests of the territory affected.

From an order of the county board of Cottonwood county granting a petition for the consolidation of certain school districts into Common School District No. 24, that district and A. H. Anderson, a resident taxpayer, appealed to the district court for that county on the grounds that the county board had no jurisdiction to act in making such order and that its action was against the best interests of the territory affected. The appeal was heard by Nelson, J., who made findings and as conclusions of law found that the board of county commissioners in forming the new district acted arbitrarily and oppressively and unreasonably and by its act impaired the usefulness of Consolidated School District No. 24 and that its action should be reversed. From the judgment entered pursuant to the order for judgment, A. O. Stark appealed. Reversed.

*P. S. Redding* and *E. H. Canfield,* for appellant.

*S. B. Wilson* and *C. J. Laurish,* for respondent.

LEES, C.

In January, 1917, common school districts Nos. 24 and 50, in Cottonwood county, each embracing substantially nine sections of land, were consolidated and designated as Consolidated District No. 24. District

[1]Reported in 175 N. W. 898.

No. 50 lay directly north of district No. 24, and near its center was located the unincorporated village of Storden.

The funds of district No. 24 were turned over to the treasurer of the consolidated district and its school house removed to Storden, where the school house of district No. 50 was located, and both buildings were thereafter used by the consolidated district.

In October, 1917, a petition was presented to the county board, asking it to set apart from the consolidated district, the territory which formerly constituted district No. 24, and to create a common school district therefrom. The petition was heard on December 5, 1917, and an order made granting it. Prior to that date, the electors of the consolidated district had voted to issue bonds of the district in the sum of $45,000 to provide funds for the purpose of building a new school house. On December 5, 1917, the bonds were issued and deposited in a bank at Mankato, the purchaser paying $4,500 to the district treasurer, which has been kept in the treasury during the pendency of this litigation. The bank still holds the bonds and they are not to be delivered to the purchaser until the final determination of this litigation, and, if the order of the county board is upheld, they are to be returned to the consolidated district. The county board apportioned the proceeds of the bonds between the two districts, but made no division of the indebtedness of the consolidated district. The assessed valuation of taxable property within the consolidated district was $373,431, of which $153,898 was represented by property in common school district No. 24 and $219,533 by property in the remainder of the consolidated district. The expense incurred in maintaining the schools in the consolidated district from September, 1917, to July, 1918, was $6,427.73, and would amount to about $10,000 per annum if the schools were conducted as they should be.

The consolidated district appealed from the order of the county board to the district court, where it was held that the action of the board was arbitrary, oppressive, unreasonable and substantially and practically impaired the usefulness of the consolidated district and destroyed the possibility of its continued existence, and its order was accordingly reversed. This appeal is from the judgment entered thereon.

The scope of the court's inquiry in a proceeding such as this is limited. The limitations to which the inquiry is subject are familiar, have been

frequently stated and need not be repeated here. Farrell v. County of Sibley, 135 Minn. 439, 161 N. W. 152; Hall v. Board of Co. Commrs. of Chippewa County, 140 Minn. 133, 167 N. W. 358; Common School District v. County of Renville, 141 Minn. 300, 170 N. W. 216; Independent School District v. Meeker County, 143 Minn. 169, 173 N. W. 850.

To sustain the conclusion of the trial court, it is urged that the action of the county board destroyed the possibilitly of the continued existence of the consolidated district, because it reduced its area to nine sections of land, and hence deprived it of the right to receive state aid as a consolidated district. It is said that without such aid it cannot employ the proper number of teachers or maintain its school as it should be maintained. The statute provides that no consolidated school district, containing less than 12 sections of land, shall be entitled to receive state aid. Laws 1915, p. 336, c. 238, § 2. The fact that the respondent district can no longer receive such aid is entitled to consideration, but is not alone sufficient to sustain the holding of the learned trial court. In Independent School District v. Meeker County, supra, the consolidated district comprised a little over 11 sections of land, having an incorporated village within its borders, and the county board detached five sections and created a common school district out of them. But for another fact, not present in the case at bar, the action of the county board would have been upheld, as will appear from an examination of the opinion in that case. The consolidated district as now constituted embraces the same territory and has the same resources as Common School District No. 50 prior to its consolidation with district No. 24.

The failure of the county board to apportion the indebtedness of the consolidated district between it and the newly organized district is of no consequence. The bonds need not be delivered to the purchaser, but may be recalled. If they are not recalled and were lawfully issued, notwithstanding the changed boundary lines, all property within the original consolidated district will continue to be liable for taxes to pay the bonds. Sections 1877 and 2677, G. S. 1913.

We are unable to perceive how the cost of maintaining the schools in either district will be any greater than it was prior to consolidation. There has been an increase in the expenses of nearly all school districts in recent years. Possibly the growing burden of expense can be best met

144 M.—28.

by the consolidation of school districts, but the difficulties which school boards encounter in meeting expenses must be solved by legislative action. The policy which may be adopted is not subject to the control of the courts. It has been in favor of increased consolidation and is actively supported by those engaged in school work, whose opinions are based on a more intimate acquaintance with our public school system than is enjoyed by the members of most county boards. But the legislature has delegated to county boards the power and duty of passing upon applications such as we have here, and the wisdom or unwisdom of their action within the limits of their powers so delegated is for the consideration of the electors by whom they are chosen.

We are unable to find sufficient evidence in the record to sustain the finding that the county board acted arbitrarily, oppressively or with an unreasonable disregard of the best interests of the territory affected, hence the judgment must be and it is hereby reversed.