## ERWIN PACKARD AND OTHERS v. COUNTY OF OTTER TAIL.[1]

April 27, 1928.

No. 26,617.

**When decision of county board respecting creation of school district will be reversed on appeal.**

Determination by board of county commissioners of questions involved in granting or rejecting petition for establishment of a new school district will be disturbed by the courts only when such determination is based upon an erroneous theory of law or when it clearly appears that the decision is arbitrary, oppressive, fraudulent or in unreasonable disregard of the best interests of the territory affected, or such as to work manifest injustice.

Schools and School Districts, 35 Cyc. p. 836 n. 96.

Plaintiffs petitioned the county board of Otter Tail county for the formation of a new school district. Upon hearing the board rejected the petition. Plaintiffs took an appeal to the district court, where the question, "Was the action of the board of county commissioners arbitrary or unreasonable?" submitted to a jury, was answered in the affirmative. From an order, Parsons, J. denying its alternative motion for judgment or a new trial, the board appealed. Affirmed.

*John L. Townley, Jr.* and *Anton Thompson,* for appellant (respondent below).

*Mark & Barron,* for respondents (appellants below).

[1]Reported in 219 N. W. 289.

WILSON, C. J.

Appeal from an order denying appellant's motion for judgment non obstante or a new trial.

Respondents petitioned for the formation of a new school district to include a part of school districts 77, 84, 94 and 102 in Otter Tail county. The county board gave all parties a full hearing and rejected the petition. No fraud is charged. An appeal was taken to the district court wherein this question was submitted to the jury: "Was the action of the board of county commissioners arbitrary or unreasonable?" The answer was "Yes."

The rule of law is well established in this state that the determination by the county board of a question of this character will be disturbed by the courts only when the determination is based upon an erroneous theory of law or when it clearly appears that the decision is arbitrary, oppressive, fraudulent or in unreasonable disregard of the best interests of the territory affected, or such as to work manifest injustice. Schweigert v. Abbott, 122 Minn. 383, 142 N. W. 723; Hunstiger v. Kilian, 130 Minn. 474, 153 N. W. 869, 1095; Diamond v. City of Mankato, 89 Minn. 48, 93 N. W. 911, 61 L. R. A. 448; Sorknes v. Commrs. of Lac qui Parle County, 131 Minn. 79, 154 N. W. 669; School Dist. No. 36 v. School Dist. No. 31, 134 Minn. 82, 158 N. W. 729; Farrell v. County of Sibley, 135 Minn. 439, 161 N. W. 152; Brazil v. County of Sibley, 139 Minn. 458, 166 N. W. 1077; Hall v. Commrs. of Chippewa County, 140 Minn. 133, 167 N. W. 358; Common School Dist. No. 85 v. County of Renville, 141 Minn. 300, 170 N. W. 216; Consolidated School Dist. No. 24 v. Stark, 144 Minn. 431, 175 N. W. 898; Paulson v. Commrs. of Yellow Medicine County, 147 Minn. 7, 179 N. W. 217; Severts v. County of Yellow Medicine, 148 Minn. 321, 181 N. W. 919; Brazil v. County of Sibley, 148 Minn. 164, 181 N. W. 329; Sartell v. County of Benton, 149 Minn. 233, 183 N. W. 148; Bennett v. Beaty, 156 Minn. 293, 194 N. W. 627; State ex rel. Inter-State I. Co. v. Armson, 166 Minn. 230, 207 N. W. 727; Rolf v. Town of Hancock, 167 Minn. 187, 208 N. W. 757. See also State ex rel. Dybdal v. State Securities Comm. 145 Minn. 221, 176 N. W. 759; G. O. Miller Tel. Co. v. Minimum Wage

Comm. 145 Minn. 262, 177 N. W. 341; and In re Judicial Ditch No. 10, 156 Minn. 392, 194 N. W. 875.

The four existing districts constitute an area substantially six miles square. This is divided equally into four districts, each three miles square, with a schoolhouse located almost in the center of each which has been there many years. The number of children of school age has steadily increased. For years people in the territory of the proposed district have repeatedly petitioned for bettter opportunities for their children. Some have moved to other localities so their children would be nearer to school. There are now 39 children in the proposed district. The county superintendent testified that "some of these children are practically isolated so far as roads and distance to school is concerned." The roads are such that children cannot attend school regularly. There seems to be no other remedy except to have a new district. Efforts to get transportation have been unsuccessful. The proposed new district will save 30 miles of travel each school day to the school children therein. It is said that in a year this will amount to about 18,000 miles.

It may be noted that of the 35,200 acres of land in the proposed district, 10,400 are now over two miles from a schoolhouse and 24,800 are over three miles from a school. Some of it is nearly six miles from a school.

If the new district is created the existing districts will have the following valuations: $71,000, $74,000, $87,000 and $100,000. They have their schoolhouses. The new district will have a valuation of $61,000. It is said that the increased burden on the old districts would be as follows: No. 102, $143; No. 94, $75; No. 77, $140; and No. 84, $100. The county board made no effort to ascertain what the increased taxes would be. The board referred the matter to one member in whose district these schools are located and followed his recommendation.

Among the objectors were eight persons in the proposed district, but only one had school children concerning which the members of the county board had an erroneous belief. Some of the members also erroneously understood that some of the children in the pro-

posed district would have farther to travel to school if the new district were established.

The internal dissension incident to petitioners' inability to get a new district or to have transportation for their children would seem to be a reason for rather than against the granting of the petition.

We are of the opinion that the evidence is sufficient to sustain the verdict.

Affirmed.

HILTON, J. took no part.