IN RE CONSOLIDATION OF SCHOOL DISTRICTS NOS. 42, 43, 48, 86, 105, 108, 115, AND PARTS OF NOS. 76, 84, 128, AND 140, FREEBORN COUNTY.
RANDOLPH THORLAND AND OTHERS v. INDEPENDENT CONSOLIDATED SCHOOL DISTRICT NO. 44.[1]

January 6, 1956.

Nos. 36,562, 36,673, 36,689.

---

[1]Reported in 74 N. W. (2d) 410.

*Moody & Springsted, Dorsey, Colman, Barker, Scott & Barber,* and *De Forest Spencer,* for appellant.

*Ray G. Moonan, George A. Lewis, Peterson, Peterson & Nordin, Maloney & Wheeler,* and *Moonan, Moonan, Friedel & Senn,* for respondents.

KNUTSON, JUSTICE.

These are appeals from orders and judgment of the district court setting aside a proceeding for the consolidation of a number of school districts in Freeborn County.

Emmons, Minnesota, is an incorporated village located on the Minnesota-Iowa border about 12 miles south of Albert Lea in Freeborn County. Its population is between 300 and 400 people. The village of Emmons, together with about 1,900 acres of adjoining farmland, constitutes School District No. 44. That district, at the time of the commencement of the proceedings involved here, had a graded elementary school and a 4-year high school. Both schools drew a substantial part of their students from other nearby school districts, none of which maintained a high school. Some of such districts maintained one-room rural schools and some maintained no school.

In 1952 and 1953, various meetings and planning sessions were held in the Emmons and surrounding school districts with the object in mind of preparing a proposed school consolidation plat. Such plat was finally prepared and was submitted to the county superintendent of schools of Freeborn County on December 30, 1953. The procedure thereafter followed the course prescribed by M. S. A. 122.18 to 122.27. The plat was transmitted to the commissioner of education in St. Paul. He gave it a rather qualified approval in the following language:

"In approving this plat consideration has been given to the small enrollment in this school area and the limited offerings of the high school. With the stronger financial position after consolidation it will, of course, be possible to improve the educational program. However, great care should be taken in the expansion of school facilities so as to not build beyond the demands of the area. Study should be made of the long-range possibilities for strengthening the educational program and services on a wider scale and over a wider area."

After the plat was returned by the commissioner of education to the county superintendent, petitions were received by the latter for an election on consolidation. Such election was held on April 1, 1954, resulting in approval of the proposed consolidation by a margin of 224 to 92, and the order of consolidation thereafter was issued on April 8, 1954.

About halfway between Albert Lea and Emmons, on the railroad and highway connecting the two, is located the unincorporated "village" of Twin Lakes. While Twin Lakes really is not a village, it has been referred to as such in the record and, for convenience, will be so designated here. Twin Lakes has a population of about 150 people. It contains, among other things, a bank, a church, a lumberyard, two stores, two garages, filling stations, taverns, and other places of business. A milk-drying plant was being built at the time of the trial. It is within and part of School District No. 76, which maintains a school for graded students in Twin Lakes and transports substantially all its high school students to Albert Lea. At the time of the trial, School District No. 76 had 17 grade school students attending its school in Twin Lakes and 27 high school students, of which 25 were transported to Albert Lea and two to the Emmons high school. District No. 76 pays tuition for its high school students.

Prior to the preparation of the plat for consolidation, those in charge thereof had conferred with members of the school board of district No. 76. The school board and most of the people in district No. 76 preferred to join the Albert Lea school district and were

not interested in this consolidation proceeding. Originally it was planned to have in the Emmons consolidated district an area with an assessed valuation of about $750,000. No part of district No. 76 would have been included under that plan. Thereafter, when the plat was prepared, the proposed district included a small part of district No. 76 comprising one and three-eighths sections of land on which the power plant of Dairyland Power Cooperative was located. The assessed valuation of that part of district No. 76 so included amounted to $342,000. The assessed valuation of district No. 76 was $420,000 prior to the proposed consolidation. Thereafter it would be in the neighborhood of $78,000. The tax rate in district No. 76 for school purposes was 10.5 mills prior to the consolidation, and it is estimated that thereafter it would be 43 mills. In taking over this small area of district No. 76 with a high assessed valuation, the consolidated district would take one high school student and one grade school student. All the remaining students in district No. 76 still would be the obligation of that district.

The proposed consolidated district would include an area of about 14 miles in length, east and west along the Iowa border. Other consolidated districts border it on both east and west extremities. The Albert Lea school district borders it for the most part on the north. As a consequence, its future hope of expansion is negligible. The proposed consolidated district would have an estimated 67 high school students and 161 elementary students. In addition, it now draws about 11 high school students from the state of Iowa. Of its assessed valuation, about one-third would consist of the assessed valuation of the power plant taken from district No. 76. There is much evidence in the record that this power plant is fast becoming obsolescent because of the greater economy of generating power in larger plants using a different type of fuel.

Separate appeals were taken from the order of consolidation by the school board officers of School District No. 76, by School District No. 76, by Dairyland Power Cooperative, and by several individuals who were residents of district No. 76 and other districts included within the proposed consolidated district. The appeals automatically

effected a stay of the proceedings, so the consolidation has not taken effect.[2]

The appeals were consolidated for trial, and the following question was submitted to a jury:

"We, the jury in the above entitled actions, answer the interrogatories submitted by the Court as follows:

" 'Was the consolidation arbitrary, oppressive or was such action in unreasonable disregard of the best interests of the territory affected?' "

The jury answered the question in the affirmative, which thereafter was adopted by the trial court in its findings, after which judgment was ordered setting aside the consolidation.

The appeals here are from the order for judgment, from the order of the court denying a motion for amended findings or for a new trial, and from the judgment. The appeals have been consolidated for hearing.

The appeals present for our determination principally two questions: (1) On appeal from an order of consolidation, does the trial court have jurisdiction to determine whether the consolidation is for the best interests of the territory affected? (2) If the trial court does have jurisdiction to determine whether the consolidation is for the best interests of the territory affected, does the evidence in this case sustain its finding?

■ With respect to the right of appeal from an order forming a consolidated school district, § 122.21, subd. 6, provides:

"After the formation of any consolidated school district, appeal may be taken as now provided by law in connection with the formation of other school districts."

Section 122.32 contains the provisions for appeal from an order forming a district. It reads in part as follows:

"Any school district officer or any other person aggrieved by any order of the board of county commissioners made pursuant to the

2In re Consolidation of School Dist. No. 30 v. Consolidated School Dist. No. 30, 151 Minn. 52, 185 N. W. 961.

provisions of this chapter may appeal from such order to the district court of the county upon the following grounds: .

"(1) That the board of county commissioners had no jurisdiction to act;

"(2) That it exceeded its jurisdiction;

"(3) That its action is against the best interest of the territory affected."

Appeals from an order consolidating school districts are governed by § 122.21 read together with § 122.32.[3]

Appellant contends that the language of § 122.21 allows an appeal to be taken "as" in the formation of other districts but that it does not expressly provide that it may be taken on the same grounds and that § 122.32 is applicable only insofar as it provides the procedure for taking an appeal. In other words, appellant contends that § 122.32(3) has no application to consolidation proceedings and that the court has no right to review the proceeding on its merits. We do not believe that appellant's contentions are tenable. The right of review in such school district proceedings is purely a matter of statute.[4]

Here the legislature has provided the grounds of appeal in § 122.32 and has adopted those grounds by reference in § 122.21. It is not for the courts to eliminate one of the grounds so provided unless the legislature, by so doing, has gone beyond the powers vested in it by the constitution. We therefore hold that the court on appeal has the same jurisdiction in reviewing an order of consolidation as it has in reviewing an order of the board of county commissioners in the formation of school districts as provided in § 122.32.

The next contention of appellant involved a determination of several questions incidental to the main one, which have been troublesome from the very early times. How far a court may go in setting aside an order of consolidation or an order of the county

---

[3] In re Order of Superintendent of Schools, Nobles County, 239 Minn. 233, 58 N. W. (2d) 465.

[4] In re Appeal of Consolidated School Dist. No. 41, 149 Minn. 418, 183 N. W. 979; School Dist. No. 135 v. McConnell, 150 Minn. 57, 184 N. W. 369.

board, what quantum of proof is required, and what are the respective functions and scope of review of the trial court and this court are not so clearly defined by statute or by our decisions.

In the determination of these questions, certain fundamental rules of law must always be kept in mind. A school district, if technically not a municipal corporation, at least is a public corporation.[5] School districts are subject to the control of the legislature, and their boundaries or territorial jurisdictions may be enlarged, diminished, or abolished in such manner and through such instrumentalities as the legislature may prescribe,[6] except as limited by the constitution.[7]

■ Determination of the question of formation or alteration of school districts by the agency to which such action is entrusted by the legislature involves a legislative action.[8]

■ Inasmuch as the action of such agency is legislative, the contention that to permit the court to determine whether such action is for the best interests of the territory affected permits the courts to invade the legislative field and thereby run afoul of the constitution is, as we said in Schweigert v. Abbott, 122 Minn. 383, 387, 142 N. W. 723, 724, not without merit. We there considered this question and disposed of it as follows:

"* * * Whether public interests require and justify the organization of municipal or quasi-municipal corporations, including school districts, is a matter purely for the legislature, and cannot be conferred upon the courts. State v. Simons, 32 Minn. 540, 21 N. W. 750. If such authority cannot be directly conferred upon the courts, as held in the case cited, it would seem that an indirect method of con-

[5]Evens v. Anderson, 132 Minn. 59, 155 N. W. 1040; Mokovich v. Independent School Dist. No. 22, 177 Minn. 446, 225 N. W. 292.

[6]Kramer v. County of Renville, 144 Minn. 195, 175 N. W. 101; State ex rel. Klimek v. School Dist. No. 70, 204 Minn. 279, 283 N. W. 397; Muehring v. School Dist. No. 31, 224 Minn. 432, 28 N. W. (2d) 655.

[7]State ex rel. Youngquist v. Common School Dist. No. 78, 180 Minn. 44, 230 N. W. 115.

[8]Irons v. Independent School Dist. No. 2, 119 Minn. 119, 137 N. W. 303; Schweigert v. Abbott, 122 Minn. 383, 142 N. W. 723; Sorknes v. Board of Co. Commrs. 131 Minn. 79, 154 N. W. 669.

ferring such jurisdiction would be equally invalid. But the question is, we think, foreclosed by our decisions. The objection now made was not sustained in Oppegaard v. Board of Co. Commrs. of Renville County, 110 Minn. 300, 125 N. W. 504, and the question was considered and determined in Irons v. Independent School District, 119 Minn. 119, 123, 137 N. W. 303. The court will, however, in determining whether the best interests of the territory affected justify a particular consolidation, limit its inquiry to the question whether the proceedings were arbitrary, resulting in unnecessary injustice to those who complain. In short the court will be guided by the rule under which the organization of municipal corporations by county commissioners is set aside by the courts as arbitrary and unreasonable. State v. Village of Dover, 113 Minn. 452, 130 N. W. 74, 539; State v. Village of Alice, 112 Minn. 330, 127 N. W. 1118."

This rule, we think, is in harmony with the great weight of authority.[9]

The discretion vested in the county board or other agency to which such legislative action is given must be fairly exercised in good faith for the best interests of the people in the districts affected. As long as it is so exercised, the courts will not interfere but, when it is exercised in a fraudulent, arbitrary, or unreasonable manner so as to constitute an abuse of discretion, then it generally is held that the courts may and will interfere on behalf of the districts or the voters injured thereby.[10]

The scope of review of the district court on appeals has been stated so frequently that it would seem unnecessary to repeat it again, but the frequency with which this question arises and is presented here indicates that it is not understood fully as yet by litigants and courts alike. Probably a restatement of the fundamental law will serve to clarify the matter to some extent, and probably as good a statement as any is that found in Farrell v. County of Sibley, 135 Minn. 439, 440, 161 N. W. 152, where we said:

[9]See, Annotations, 65 A. L. R. 1531 and 135 A. L. R. 1111.

[10]See, Annotation, 65 A. L. R. 1531, 1532; Irons v. Independent School Dist. No. 2, 119 Minn. 119, 137 N. W. 303; Schweigert v. Abbott, 122 Minn. 383, 142 N. W. 723; Sorknes v. Board of Co. Commrs. 131 Minn. 79, 154 N. W. 669.

"* * * The matter of establishing, enlarging the boundaries of or of dissolving municipal corporations is purely legislative. Jurisdiction in that respect cannot, either directly or indirectly, be conferred upon the courts. State v. Simons, 32 Minn. 540, 21 N. W. 750; 2 Notes on Minn. Reports, 659. Yet a limited jurisdiction, by way of appeal from the legislative body of whose decision complaint is made, may be and often is conferred upon the courts by express legislation. But the jurisdiction thus conferred is necessarily confined to questions affecting the legality of the proceedings, the jurisdiction of the board or officer whose decision is sought to be reviewed and, as to the merits of the controversy, whether the order or determination in a particular case was fraudulent, arbitrary or oppressive, or an unreasonable disregard of the best interests of the territory affected. * * * In proceedings under the statute for a change in the boundaries of school districts, the question whether the best interests of the affected territory, and of those residing therein, will be enhanced by the proposed change, is the primary question submitted to the board of county commissioners, but is not the question with which the court is confronted upon an appeal from the order of that body. To avoid intermeddling with the legislative judgment and discretion vested in the local body, the question presented to the court is much narrower and, aside from questions of law going to the regularity of the proceedings and the jurisdiction of the local board or tribunal, is limited to an inquiry into the character rather than the propriety or necessity of the order. In other words, as remarked by Justice Hallam in the case of Hunstiger v. Kilian, 130 Minn. 474, 153 N. W. 869, 1095, 'the court should not put itself in the place of the town board, try the matter anew as an administrative body, and substitute its findings for those of the board. A statute which so provided would be unconstitutional as a delegation to the judiciary of nonjudicial power.'"

In Severts v. County of Yellow Medicine, 148 Minn. 321, 324, 181 N. W. 919, 921, we said:

"* * * the county board, in determining the propriety of enlarging a school district, exercises a discretion that is legislative, not

judicial, and that, on appeal to the district court, the determination of the board is not reviewed as a judicial decision but as legislative action, and that the inquiry on appeal is whether the determination of the county board was based upon an erroneous theory of law or was arbitrary or fraudulent or oppressive, or in unreasonable disregard of the best interests of the territory affected."[11]

■ On appeal to the district court there is no trial de novo,[12] but the review is limited to a determination of whether the legislative agency has abused its discretion or has acted on an erroneous theory of law.[13]

While the legislature cannot confer upon the courts legislative power, it can and does give to the court power to review the action of the administrative agency upon which it has conferred the legislative power to the extent that the courts will decide whether there has been an abuse of discretion vested in such agency. The power of review does not encompass the legislative function of determination but, rather, the power to prevent the administrative agency from exceeding its power by an arbitrary abuse of discretion. Thus, instead of an original right to determine, the court's function is to provide a check upon the arbitrary abuse of power vested in the agency entrusted by the legislature with the power of determination.

---

[11]For additional authorities, see Independent School Dist. No. 47 v. Meeker County, 143 Minn. 169, 173 N. W. 850; Hunstiger v. Kilian, 130 Minn. 474, 153 N. W. 869, 1095; Brazil v. County of Sibley, 139 Minn. 458, 166 N. W. 1077; Common School Dist. No. 85 v. County of Renville, 141 Minn. 300, 170 N. W. 216; Independent School Dist. No. 65 v. Lincoln County, 155 Minn. 453, 194 N. W. 8; In re Enlargement of Independent School Dist. of Granite Falls, 140 Minn. 133, 167 N. W. 358; Packard v. County of Otter Tail, 174 Minn. 347, 219 N. W. 289; School Dist. No. 37 v. County of Yellow Medicine, 174 Minn. 380, 219 N. W. 456; In re Dissolution of Independent School Dist. No. 27, 240 Minn. 257, 60 N. W. (2d) 617; In re Independent Consolidated School Dist. No. 16, 241 Minn. 454, 63 N. W. (2d) 543; Annotation, 65 A. L. R. 1531; Schweigert v. Abbott, 122 Minn. 383, 142 N. W. 723.

[12]In re Enlargement of Independent School Dist. of Granite Falls, 140 Minn. 133, 167 N. W. 358.

[13]See, Annotations, 65 A. L. R. 1529 and 135 A. L. R. 1107.

In other words, the court's function, rather than being one of original determination, is to prevent the improper determination by the administrative agency.

The question involved here was submitted to a jury upon a special interrogatory. Such a question was submitted to a jury in other cases, apparently without objection.[14] The propriety of so doing is not raised here, nor do we have before us any question as to whether the court's instructions submitted the case to the jury upon the proper burden of proof. We do not believe that the question involved in such appeal is one which ordinarily should be submitted to a jury. The question is largely one of law.[15] To say that it is a fact question results in a perilous approach to an exercise of the legislative function which the courts do not have. Here it is true that the court adopted the special verdict of the jury in its findings, and no question has been raised as to the propriety of so doing, but for the future guidance of the trial courts we wish to say that, on such appeal, the question ordinarily should not be submitted to a jury.

■ On appeal to this court, our review, like that of the district court, is limited to a consideration of whether the trial court has confined its review to the limited scope of such review and, aside from jurisdictional questions, whether the evidence reasonably supports the determination of the trial court, having in mind at all times the limited scope of such review. In Independent School Dist. No. 65 v. Lincoln County, 155 Minn. 453, 454, 194 N. W. 8, we said with respect to the function of this court:

"* * * On appeal from any such order, whether it [the order of the district court] approves or disapproves the action of the county board, the supreme court will be guided by the general rule appli-

[14]Bloomquist v. County of Washington, 101 Minn. 163, 112 N. W. 253; Irons v. Independent School Dist. No. 2, 119 Minn. 119, 137 N. W. 303; School Dist. No. 36 v. School Dist. No. 31, 134 Minn. 82, 158 N. W. 729; Sartell v. County of Benton, 149 Minn. 233, 183 N. W. 148; Packard v. County of Otter Tail, 174 Minn. 347, 219 N. W. 289; In re Appeal of Consolidated School Dist. No. 16, 179 Minn. 445, 229 N. W. 585.

[15]See, Independent School Dist. No. 65 v. Lincoln County, 155 Minn. 453, 194 N. W. 8.

cable to other appeals involving questions of fact, thus limiting consideration in this court, there being no points of law, to the question whether the order of the trial court is clearly or manifestly against the evidence."

While that statement technically may be correct, it often may be somewhat misleading in that the trial court does not determine the question as an ordinary question of fact, based upon a fair preponderance of the evidence, but is limited to a determination of whether the evidence so clearly demonstrates an abuse of discretion that it may be said that the action of the county board or other administrative agency is so arbitrary, fraudulent, capricious, or unreasonable that it is an abuse of legislative discretion. In reviewing the determination of the trial court, we must always be mindful of the limited scope of judicial review. Our function is to see that the trial court does not transcend that limited field so as to usurp the legislative function, which it does not and cannot have.

■ With these rules in mind, we come to the crucial question: Does the evidence here sustain the court's findings that the proposed consolidation was arbitrary, oppressive, and in unreasonable disregard of the best interests of the territory affected? At the outset we must bear in mind that "territory affected" includes district No. 76 as well as the proposed consolidated district. The whole territory must be taken into consideration.[16]

■ Obviously it would not be for the best interests of district No. 76 to lose about 75 percent of its assessed valuation and only two school children. However, that is not the entire consideration. We think that it can be said that an arbitrary raid on the territory of one school district, by taking a small part having an industrial plant located thereon for the sole purpose of enhancing the taxable value of another district without taking over a corresponding proportion of the burden of education, ought not to be permitted and

---

[16]Irons v. Independent School Dist. No. 2, 119 Minn. 119, 137 N. W. 303; School Dist. No. 36 v. School Dist. No. 31, 134 Minn. 82, 158 N. W. 729.

should be considered such arbitrary action as may be enjoined by judicial decision.[17]

It must be borne in mind that the people in that part of district No. 76 which remains outside the consolidated district have no voice, either by vote or otherwise, to protest the raid on their territory and that their only protection is such as may be afforded by the courts. If the courts have any power to interfere at all with the action of the administrative agency, it ought to be exercised in a case such as this.

There is other evidence to support the court's findings as well. The possibilities that the power plant may become obsolete within a few years, while somewhat speculative, is nonetheless a factor to consider in view of the limited size of this consolidated district and the unlikely prospect of its ever acquiring more territory. In the event that such power plant should be abandoned, it would become extremely difficult for the consolidated district to function, and that future possibility, while somewhat in the realm of conjecture, still is a factor which can be considered. Taking the evidence as a whole, and we need not discuss it all, we are convinced that there is sufficient support to sustain the findings of the court based upon the rules of law announced above.

Affirmed.

MR. JUSTICE FRANK T. GALLAGHER took no part in the consideration or decision of this case.

---

[17]See, Heaton v. Jackson, 34 Ohio App. 424, 171 N. E. 364.