# ARCELLA LIESER AND ANOTHER v. TOWN OF ST. MARTIN AND ANOTHER.
## TOWN OF ZION, RESPONDENT.

96 N. W. (2d) 1.

April 3, 1959—No. 37,640.

154

*Phillips & Donohue,* for appellant.

*Harry E. Burns* and *Mahoney & Mahoney,* for respondents Arcella Lieser and Thecla Spanier.

NELSON, JUSTICE.

Appeal from an order denying a motion of the town of St. Martin for judgment in its favor notwithstanding the verdict of the jury or, in the alternative, for a new trial.

Petitioners, Arcella Lieser and Thecla Spanier, filed their petition on July 25, 1957, with the town boards of the towns of St. Martin and Zion in Stearns County for the establishment of a town road on the line between said towns. The petition was not approved by a majority of the members of the two town boards, and the petitioners appealed to the district court from the determination. The matter was tried before the district court and a jury, the jury being asked to answer the following interrogatory:

"Did the Town Boards of the Towns of St. Martin and Zion in Stearns County, Minnesota, act arbitrarily, oppressively or fraudulently and against the best interests of the public in denying the petition for the establishment of the road in question?"

The jury answered the question in the affirmative.

When the two boards met on September 14, 1957, for a hearing on the petition, the members personally examined the route of the proposed road, from one end to the other, interviewing landowners and interested parties in the vicinity adjacent to the proposed township

road. With price lists in their possession, they examined and determined the number, size, and cost of all culverts required and the cost and size of one bridge which would have to be built across a stream traversing the dividing line between two towns, in case the two boards should jointly determine to establish the proposed road.

The members of the two boards, with a member of the township of Zion acting as chairman, heard all parties in favor of or opposed to the granting of the petition. The record indicates that all persons present at the meeting who wanted to be heard were heard. Any suggestion to the contrary finds no reasonable support in the record. The record also indicates that no one attending the meeting from the town of St. Martin spoke in favor of the petition, although several persons from the town of St. Martin had signed the petition. The minutes of the clerk of the town board of St. Martin show that of the persons present who spoke at the meeting either for or against the petition five were opposed to the establishment of the road, three were in favor of it, and one person stated that he was not opposed to it but wanted to be paid damages. One of the landowners gave a figure of $800 as the damages which he believed he would be entitled to. Another owner who indicated he would be damaged did not give any figure and his damages were not computed at the time. The gross figure, as the probable cost of the proposed road, arrived at by the boards was from $19,604.25 to $20,658.60, which included only $800 for land that would have to be taken.

The members of each town board, after completing their deliberations, acted separately on the petition. When the result of their combined vote was announced, it appeared that all the members of the Zion town board voted in favor of granting the petition and all of the members of the St. Martin town board voted in opposition to it.

The record indicates that neither town had funds to pay its proportionate share of the cost of establishing the proposed road and that it would have been necessary for both towns either to float a bond issue or to secure the money in some other way.

It also appears that a similar petition containing the same road proposal had been filed in 1946. At that time, the members of the two town boards determined to submit the matter to the electors at an

annual meeting, through a proposal to raise sufficient money to meet the cost of establishing the road. When submitted in March 1947, the proposal failed in the town of St. Martin by a vote of 58 to 11, and carried in the town of Zion by a vote of 53 to 21.

The town of St. Martin is located to the north and the town of Zion to the south of an east-west dividing line. The present petition seeks the establishment of a 4-rod town road on the dividing line extending easterly from the northwest corner of section 5 in the town of Zion for a distance of 300 feet more than one mile. Exhibits were introduced showing the terrain of the land which the proposed road would cross, indicating four swales or watercourses and a large creek in which water runs throughout the year. The creek would have to be spanned by a bridge at an estimated cost of from $6,000 to $8,005.50.

Section 32 in the town of St. Martin lies to the north and section 5 in the town of Zion to the south of the proposed road. The existing town road begins at the southeast corner of section 32 and the northeast corner of section 5 and extends in a northwesterly direction across section 32. At the point where it crosses the west section line, it is approximately 2,000 feet from the northwest corner of section 5, the point of beginning of the proposed road. When the existing road was constructed a bridge was built to span the creek referred to. That bridge is located approximately 500 to 600 feet north of where the new proposed road would require another bridge of approximately the same size to be built. It appears that the width of the ravine or gully through which the creek runs is 400 to 500 feet. It appears that the land over which the new road would cross is of uneven elevation and when compared to a present existing town road traversing section 32 of the town of St. Martin in a southeasterly-northwesterly direction, the low spot to the east is 35 feet lower than the existing road, and that the highest point near the west end of the proposed road is 37½ feet higher in elevation than the existing road at the east end of the proposed road.

There is an existing township road on both the west and east lines of section 5 in the town of Zion and a county-aid road running east and west along the south line of section 5 in the town of Zion. It runs a mile south of the village of St. Martin with connecting roads that run into the village.

The farm of the Liesers is located in sections 4 and 5 of the town of Zion, their farm buildings being in the northeast corner of section 5. There are two roads extending from their buildings to a township road; one of which extends to the east across the creek to the township road on the east side of the section, a distance of .4 miles. From the town road on the east the Liesers in traveling to the village of St. Martin travel to the northeast corner of the section and thence to St. Martin. Besides, the Liesers have a road extending to the west to the town road on the west line of section 5 which is .6 miles from their buildings. From that point they can travel south to the county-aid road as a matter of choice and it appears that they can travel along the west line of section 5 to the existing town road across section 32 in the town of St. Martin.

The Spaniers reside in section 6 in the town of Zion about a mile west of the Lieser farm. In going from their farm buildings to St. Martin they can at present travel to the east to the town road on the section line between sections 5 and 6, and then either north to the town road across section 32 or to the south to the county-aid road. The existing town road crossing the town of St. Martin and maintained by it is an all-season road. Snow removal is provided in the winter and it is open to travel the year around whenever other nearby roads in the vicinity are open to travel. There are also connecting roads that run into the village of St. Martin.

It is evident upon a full consideration of the record that all of the foregoing factors were taken into account by the members of the town boards, including the factor that the town of St. Martin presently maintains the existing 4-rod town road across section 32 at its own expense. It is not to be overlooked that the town of St. Martin would have to bear its share of the cost of constructing and maintaining the proposed road in addition to maintaining the existing road and that the record indicates that the establishment of the new proposed road would cost approximately double what the establishment of a similar average road for the same distance would presently cost in other adjacent areas.

The main question which arises on this appeal is whether the evidence was sufficient as a matter of law to support a finding that the members of the town boards acted arbitrarily, oppressively, or fraudu-

lently and against the best interests of the public in denying the petition for the establishment of the proposed new road.

We recognize at the outset that the powers of the township officers in the instant case are not unlimited since their rejection of such an application as was involved here must be made, not arbitrarily or capriciously, but in the exercise of a sound discretion. The general rule is that a decision by the members of town boards acting in a legislative capacity shall be the outcome of examination and consideration; in other words, that it shall constitute a discharge of the official duty and not a mere expression of personal will.

We will consider the following assignments of error: (1) That the court erred in denying the motion for a directed verdict made at the close of the testimony; (2) that the court erred in denying the motion to set aside the affirmative answer of the jury to the interrogatory submitted and substituting in lieu thereof a negative answer and for judgment for the towns of St. Martin and Zion notwithstanding the verdict of the jury or for a new trial; (3) that the court erred in charging the jury that the burden of proof which was upon the appellants below would be met by a fair preponderance of the evidence; (4) that the court erred in refusing to instruct the jury that "It is only in those cases where it clearly appears that boards acted in a fraudulent, arbitrary or capricious manner that a court or jury may overrule or set aside the action of the boards charged with the duty of passing on a petition for the establishment of a road on a town line."

M. S. A. 160.091, subd. 1, provides for an appeal by any person aggrieved by any determination of a county or town board establishing, altering, or discontinuing, or refusing to establish, alter, or discontinue, any public road. Subd. 4 of the same section provides for the method of trial, requiring that the proceedings of the court or jury shall be based upon the same principles which the board was required to follow in its determination.

It is well established in this state that a town board acting on a petition for the establishment of a town road acts in a legislative capacity; all questions in respect to the propriety and necessity of the particular improvement are legislative in character and the determination thereof by the local tribunal is final and will be set aside by the court

on statutory appeal only when it appears that the evidence is practically conclusive against it, or that the local board proceeded on an erroneous theory of law, or that it acted arbitrarily and capriciously against the best interests of the public. This court has adhered to the rule that the appeal in such cases does not bring up such matters for determination by the court de novo and that it would be error for the trial court to submit to the jury the matters involved in the cause as an original question.

In Brazil v. County of Sibley, 139 Minn. 458, 166 N. W. 1077, the petition under the statute involved the plea for a change and alteration of an alleged existing public highway which was duly presented to the board of county commissioners. The court in that case said that since the statute required the appeal to be brought to trial at a general term of the court it seemed clear that the legislature contemplated a trial in harmony with the usual court procedure, which would at least vest in the court the discretionary power to order the submission of all or any specific issue to a jury, as in ordinary civil actions, and went on to state that *this is particularly true where the question of damages is involved, though there may be no absolute right to such a trial.* The court also said that in view of the restricted nature of the question presented, where the appeal brings up for review only the correctness of the decision of the lower tribunal as to the propriety and necessity of the proposed improvement, the most appropriate procedure would seem to be a trial without a jury for the reason that there might be some difficulty in impressing upon the mind of the jury the precise scope and extent of their duty in such a case. The court below had instructed the jury that (139 Minn. 460, 166 N. W. 1078): "* * * you are to determine this question just as you would determine it, were it submitted to you in the first instance." This court held that the trial court in thus presenting the case to the jury was in error for the reason that the question whether public interests require or will justify a particular improvement is legislative in character and in no proper sense judicial; that the determination thereof may be delegated by the legislature to local municipal boards but cannot be conferred upon the courts except in special instances where a determination thereof is incidental to the exercise of its jurisdiction in a proceeding properly of judicial cognizance; and

that this rule applies to all public works and improvements involving an exercise of legislative judgment and discretion which are committed to local municipal control, including highway, drainage, and other proceedings for the taking of private property for public use, and the organization of public corporations or their consolidation. The Brazil case established that the appeal in such proceedings does not bring up the question of public necessity for trial de novo.

In Hunstiger v. Kilian, 130 Minn. 474, 538, 153 N. W. 869, 1095, Mr. Justice Hallam speaking for the court remarked that any attempt by the legislature to confer greater authority upon the courts in such proceedings would be unconstitutional.

In Rolf v. Town of Hancock, 167 Minn. 187, 208 N. W. 757, this court held that the question whether a public highway should be vacated is legislative and that the determination of the local governing body cannot be disturbed unless it is arbitrary or oppressive or fraudulent or *manifestly* against the best interests of the community. It was held that under the evidence the act of a town board in vacating a highway was within its legislative discretion and that the statute authorizing appeal confers jurisdiction but creates no substantive right and does not make the act of the local governing body judicial although it does afford a convenient method of attacking it if invalid within the tests stated. Mr. Justice Dibell, referring to the suggestion made in the case that the members of the town board had preconceived views as to the propriety of vacating the highway involved, the question of vacation having been an issue in the town election, said that (167 Minn. 189, 208 N. W. 758):

"* * * The question of legislative or administrative policy may be made an issue before the voters. Often it is. The officers elected need not have the unbiased attitude of jurors, nor are they elected as judges. * * * It is unfortunate if the language used carries the thought that a member of an elective board is disqualified because of interest, actual or sympathetic. His attitude may be shown in applying certain features of the recognized test of validity or invalidity; but the final question is one of result rather than motive."

In the Rolf case the highway involved ran 2 miles north and south on

a section line and was established 1½ years before the vacation. A half mile of the highway to the north, which included a theretofore-established cartway, was not vacated. This was the only portion which had so far been improved. There was evidence that it would cost $15,000 or $20,000 to build the road, but there was also evidence that it would cost much less. There were also other roads in the town in need of grading and graveling. There was a section-line road one mile east and another a mile west. It was said, however, in that case that the vacated road was not of substantial, if any, advantage in reaching a market town or a public school. Doubtless there were conveniences to the general public of the town and of the community in general in having the road open. This court in conclusion said (167 Minn. 190, 208 N. W. 758):

"* * * Any public road is of service to those who would use it occasionally or frequently. This one, if improved, would have been of public use. It was a fair case for legislative judgment whether the road should be vacated or left open. So far as can be seen from the record the town board, in the exercise of a proper legislative discretion, might have determined it either way. A finding of the jury contrary to that directed could not be sustained."

Bennett v. Beaty, 156 Minn. 293, 194 N. W. 627; In re Establishment of Judicial Road, 176 Minn. 94, 222 N. W. 578; Trout Brook Realty Co. v. Town of Featherstone, 173 Minn. 448, 217 N. W. 499; Rask v. Town Board of Hendrum, 173 Minn. 572, 218 N. W. 115; Severts v. County of Yellow Medicine, 148 Minn. 321, 181 N. W. 919; Farrell v. County of Sibley, 135 Minn. 439, 161 N. W. 152; Sorknes v. Board of Co. Commrs. 131 Minn. 79, 154 N. W. 669; Annotations, 65 A. L. R. 1529, 1531, 1532, and 135 A. L. R. 1107, 1111; Schweigert v. Abbott, 122 Minn. 383, 142 N. W. 723; Irons v. Independent School Dist. No. 2, 119 Minn. 119, 137 N. W. 303; State ex rel. Luley v. Simons, 32 Minn. 540, 21 N. W. 750; 16 Dunnell, Dig. (3 ed.) § 8443, note 9; 1 Dunnell, Dig. (3 ed.) § 397b.

■ Certainly at best the cost of the proposed road in the instant case and the close proximity of another township road, requiring maintenance by the town of St. Martin, are factors about which there might reason-

ably be a marked difference of opinion. If all the factors which the record indicates exist were taken into account by the members of the two town boards in reaching their conclusions, then a determination honestly made is not arbitrary. Neither would it be fraudulent, oppressive, or manifestly against the public interest.[1]

■ The trial court in the instant case instructed the jury that the burden of proving that the two town boards acted arbitrarily or oppressively and against the best interests of the public in denying the petition could be met by a fair preponderance of the evidence. Clearly the trial court was in error in so doing and in refusing that part of the requested instruction referred to in the assignments of errors. This court has recently considered in other cases the main questions involved on this appeal. In In re Certain School Dists. Freeborn County, 246 Minn. 96, 102, 74 N. W. (2d) 410, 415, this court said:

"The next contention of appellant involved a determination of several questions incidental to the main one, which have been troublesome from the very early times. How far a court may go in setting aside an order of consolidation or an order of the county board, what quantum of proof is required, and what are the respective functions and scope of review of the trial court and this court are not so clearly defined by statute or by our decisions."

■ A review of the cases clearly establishes that on an appeal to the district court there is no trial de novo, the review being limited to a determination of whether the legislative agency has abused its discretion or has acted on an erroneous theory of law. In discussing the matter of submitting to the jury, upon a special interrogatory, the question involved in In re Certain School Dists. Freeborn County, the court said (246 Minn. 107, 74 N. W. [2d] 417):

"The question involved here was submitted to a jury upon a special interrogatory. Such a question was submitted to a jury in other cases, apparently without objection. The propriety of so doing is not raised here, nor do we have before us any question as to whether the court's instructions submitted the case to the jury upon the proper burden of

[1] 3A Wd. & Phr. (Perm. ed.) p. 565, and 29 Id. p. 607, for the meaning of the words "arbitrary" and "oppressive."

proof. We do not believe that the question involved in such appeal is one which ordinarily should be submitted to a jury. The question is largely one of law. To say that it is a fact question results in a perilous approach to an exercise of the legislative function which the courts do not have. Here it is true that the court adopted the special verdict of the jury in its findings, and no question has been raised as to the propriety of so doing, but for the future guidance of the trial courts we wish to say that, on such appeal, the question ordinarily should not be submitted to a jury.

"On appeal to this court, our review, like that of the district court, is limited to a consideration of whether the trial court has confined its review to the limited scope of such review and, aside from jurisdictional questions, whether the evidence reasonably supports the determination of the trial court, having in mind at all times the limited scope of such review."

The court in that case also quoted the following statement from Independent School Dist. No. 65 v. Lincoln County, 155 Minn. 453, 454, 194 N. W. 8:

"* * * On appeal from any such order, whether it [the order of the district court] approves or disapproves the action of the county board, the supreme court will be guided by the general rule applicable to other appeals involving questions of fact, thus limiting consideration in this court, there being no points of law, to the question whether the order of the trial court is clearly or manifestly against the evidence."

And then proceeded to state that (246 Minn. 108, 74 N. W. [2d] 418):

"While that statement technically may be correct, it often may be somewhat misleading in that the trial court does not determine the question as an ordinary question of fact, based upon a fair preponderance of the evidence, but is limited to a determination of whether the evidence so clearly demonstrates an abuse of discretion that it may be said that the action of the county board or other administrative agency is so arbitrary, fraudulent, capricious, or unreasonable that it is an abuse of legislative discretion. In reviewing the determination of the trial court, we must always be mindful of the limited scope of judicial review. *Our function is to see that the trial court does not transcend that limited*

*field so as to usurp the legislative function, which it does not and cannot have."* (Italics supplied.)

In In re Merger of Certain School Dists. Pipestone County, 246 Minn. 110, 114, 74 N. W. (2d) 419, 422, the court said:

"We recently have had occasion to reconsider the rules applicable to an appeal of this kind in In re Consolidation of Certain School Districts, Freeborn County, 246 Minn. 96, 74 N. W. (2d) 410. We need not repeat what was said there. It is enough for this decision to say that the district court on appeal does not try the case de novo, and it is only when the evidence shows that the action of the county board was so arbitrary or unreasonable that it can be said that the board has abused the legislative discretion vested in it that the action of the county board may be set aside by the court."

Having in mind the rules hereinbefore considered brings us to the crucial question involved in this case: Does the evidence in the instant case sustain the jury in answering yes to the one question submitted to it? No further discussion of the evidence is necessary since we are convinced that there is not sufficient evidence to sustain the finding of the jury and that clearly the appellant was entitled either to a directed verdict at the close of all the testimony or to judgment notwithstanding the verdict of the jury.

Reversed and judgment ordered affirming the town boards.

MR. JUSTICE MURPHY took no part in the consideration or decision of this case.