IN RE DISSOLUTION OF INDEPENDENT SCHOOL
DISTRICT NO. 27, HENNEPIN COUNTY.
IRA W. METCALF, APPELLANT.
IN RE ORDER OF COUNTY BOARD DATED AUGUST 19, 1952.
RICHARD J. PARISH, APPELLANT.[1]

October 23, 1953.

Nos. 36,132, 36,133.

[1]Reported in 60 N. W. (2d) 617.

*Wyman Smith,* for appellant Parish.
*George Hedlund,* for appellant Metcalf.
*Geo. A. French* and *Chas. W. Root,* for respondent.

KNUTSON, JUSTICE.

This is a consolidated appeal from judgments of the trial court which affirmed orders of the board of county commissioners of Hennepin county dissolving Independent School District No. 27 of Hennepin county, referred to hereinafter as the Lincoln district, and attaching it in part to Independent School District No. 24, referred to hereinafter as the Robbinsdale school district, and in part to Independent School District No. 43, referred to hereinafter as Osseo school district.

For the purposes of this appeal the material facts may be briefly stated as follows: The Lincoln district comprises an area of about 7.5 square miles. It has one elementary school building; its junior high students are sent to Jordan High School and its senior high students are sent to North High School, both in the city of Minneapolis. Two classes of fifth-grade students are housed in neighboring school districts. The assessed value of the Lincoln district for 1951 was $621,124. It has a bonded indebtedness of $310,000, composed of three bond issues the last of which, amounting to $160,000, was obtained on April 1, 1952, and is still on hand. It is estimated that about $120,000 and the school building belonging to this district will go to the Robbinsdale district if this annexation is permitted to stand.

The Lincoln district area includes portions of the village of Crystal and the towns of Plymouth, Brooklyn, and New Hope. The district is inhabited to a large extent by young people, and the

population is growing rapidly. The school's census survey showed that the total number of children 0 to 20 years old in 1950 was 633; in 1951, 1,194; and in 1952, 1,705. It is conceded that, in view of the assessed valuation of the district and its present bonded indebtedness, it is not now possible to raise enough money to provide junior or senior high school facilities in the district and that in all probability it will not be possible to do so within the foreseeable future.

The Robbinsdale school district is also in a rapidly growing community. In 1930 it contained 5.5 square miles and had 1,300 pupils in its school from kindergarten through the ninth grade and 200 in its high school. It now comprises 25.66 square miles and has a pupil enrollment of 5,650. Its classrooms are crowded, and many so-called substandard classrooms are being used.

On April 21, 1952, the electors of Lincoln district, by majority vote, adopted a resolution requesting the county board to dissolve the district pursuant to M. S. A. 122.28. The county board, on July 16, 1952, adopted a resolution dissolving the district and on August 19, 1952, attached approximately the southerly two-thirds of the district to the Robbinsdale school district and the northerly one-third to the Osseo school district. Appeals were taken by Ira W. Metcalf from the order of the county board dissolving the Lincoln district and by Richard J. Parish from the order of annexation to the Robbinsdale school district. After a trial by the court, the orders of the county board were affirmed and appeals from the judgments entered pursuant thereto followed. The appeals here have been consolidated and heard together.

It is the contention of appellants: (1) That the legislative discretion of the county board was improperly exercised and was arbitrary and capricious; (2) that the legislative discretion of the county board was unreasonable and against the best interests of the territory affected; (3) that the county board exceeded its jurisdiction in dissolving the Lincoln district; and (4) that the court erred in refusing to receive certain evidence offered at the trial.

The scope of our review on an appeal of this kind is governed by our statute and our decisions construing it. That the action of a county board in dissolving a school district, as well as in attaching it to another district, is legislative in character is now so well established that it needs no citation of authority. A review of such action by the court is limited by statute to a much narrower scope than review in an ordinary civil action. This court, as well as the trial court, must limit its inquiry to a consideration of whether the action of the county board was arbitrary, oppressive, unreasonable, or fraudulent or based upon an erroneous theory of law. Brazil v. County of Sibley, 139 Minn. 458, 166 N. W. 1077; In re Enlargement of Independent School Dist. of Granite Falls, 140 Minn. 133, 167 N. W. 358; In re Enlargement of Independent School Dist. No. 43, 148 Minn. 321, 181 N. W. 919. We will not reverse merely because we disagree with the honest exercise of judgment by the county board.

The wisdom of the statute involved is not a matter for judicial determination. In Common School Dist. No. 85 v. County of Renville, 141 Minn. 300, 304, 170 N. W. 216, 218, we said with respect to a similar statute:

"* * * The wisdom or propriety of the statute is not a judicial question, but one solely for the legislature. A statute may seem unwise, it may seem unjust, it may seem unreasonable in its operation upon the rights of the citizen, but that view of the law, in the absence of some conflict with the Constitution, cannot be made the basis of a refusal by the courts to enforce it. If it be deemed thus obnoxious the complaint should be addressed to the legislature. And though this statute is a distinct departure from the earlier policy of the state to extend to the voters of school districts a voice in all the affairs thereof, the departure was in furtherance of the educational interests of the state, a legitimate legislative policy, and clearly within and not opposed to nor in conflict with the constitutional rights of the citizen."

We have recently had occasion to pass upon the authority of a county board to dissolve a functioning school district and to

attach it to another district under § 122.28. In In re Dissolution of School Dist. No. 33, 239 Minn. 439, 60 N. W. (2d) 60, after an exhaustive and thorough examination of this statutory provision, we held that, upon a proper petition, a county board may dissolve *any* school district, whether it is a functioning school district or a nominal or so-called withered school district, and also that, once the school district is dissolved, it is mandatory that the county board attach the territory to some other district. The same must be true when the matter is presented to the county board by a resolution adopted by the electors in the manner provided by law rather than by petition. In spite of our recent decision, appellants still contend that the authority of the county board under § 122.28 extends only to withered school districts. This question is fully determined in the cited case, and it would serve no useful purpose to restate what we determined there.

■ . It may well be that the case before us is a good illustration of the type of situation which the legislature intended to take care of by enlarging the scope of the statute to enable county boards to dissolve a functioning school district as well as a withered one. The responsibility of providing suitable and equal educational opportunities to all children of school age is placed upon all the people of our state. It may well be that it is even more important to permit a rapidly growing school district having a large population of children of school age which is unable financially to provide school facilities for its children to be dissolved and the territory attached to a district where such facilities are or may become available than it is to enable a school district where there are few or no school children to be dissolved. If the statute did not provide for this situation a school district poor in tangible assets as disclosed by assessed valuation and inhabited by young people who by the very nature of things are parents of children might well find itself stranded without facilities or ability to provide facilities for educating its children. Clearly, children in such poor districts should not be deprived of an opportunity to secure an education merely because other districts more fortunate in having greater assessed

valuation do not want them. It must have been to take care of a situation such as we have here that the legislature enlarged the scope of § 122.28 so that the county board, on a proper petition or vote, could dissolve any district and attach it to another district where educational opportunities are or may become available. The problem is not one for short-range planning, but requires a long-range view of what is best for the entire territory.

Viewing the facts in this case from that standpoint, we believe that it cannot be said that the action of the county board was not justified. It does not answer the problem to say that the children in the Lincoln district can now secure a high school education in the schools of Minneapolis. The time may come when the Minneapolis schools cannot or will not any longer consent to receive them. If and when that time comes, the Lincoln district will be unable to provide necessary educational facilities for its children. It would seem that the action taken by the county board in attaching the district to another where, by long-range planning, these children will be assured of school facilities may well be the best if not the only permanent solution of the problem.

The rapid growth of many suburban areas has led and no doubt will in the future lead to the development of many communities inhabited by young people who by the very nature of things have more children of school age for the population than others in older communities. It frequently develops that such communities do not have the assessed valuation, upon which depends to a large extent the ability to provide school facilities, that some older communities have. From these facts it may then become necessary for older communities to shoulder part of the load in order that children may receive an education. The time will no doubt come when these younger parents will in turn have to shoulder their share of the burden of educating children of others who by the passing of time have become the parents of children of school age.

These considerations, among others, must be borne in mind in determining whether the action of the county board in a case of this kind was in the best interests of the territory affected. As so

viewed, we cannot say that the action was so arbitrary or so unreasonable that it exceeded the legislative discretion vested in the county board.

We have examined the assignments of error pertaining to the rejection by the trial court of certain offered evidence. We find no reversible error therein, and we do not see that it would serve any purpose to discuss such evidence in detail.

Appellants rely to some extent upon our decision in Bricelyn School Dist. No. 132 v. Board of Co. Commrs. 238 Minn. 53, 55 N. W. (2d) 597. That case is not in point. We held in that case that under §§ 122.05 to 122.08 a county board may not carve up a district reorganized under the provisions of M. S. A. 122.40 to 122.57 by forming new common school districts out of a part of the reorganized district because to permit the county board to do so would in effect defeat the very purpose of the reorganization act. The facts in that case and in this are almost opposite. Here, the county board is enlarging an existing district by attaching new territory which cannot of itself provide adequate educational facilities. Section 122.28 does not conflict with the reorganization act.

We find no reversible error.

Affirmed.