246 Minn. 110 (1956)
IN RE MERGER OF COMMON SCHOOL DISTRICT NO. 57 WITH INDEPENDENT CONSOLIDATED SCHOOL DISTRICT NO. 1, PIPESTONE COUNTY.
HERMAN HUBNER
v.
STUART CARSON AND OTHERS.[1]
No. 36,707.
Supreme Court of Minnesota.
January 6, 1956.
*111 Palmer & Rice, for appellants.
P.M. Meehl and Glenn Catlin, for respondent.
KNUTSON, JUSTICE.
Appeal from a judgment entered pursuant to an order of the court vacating an order of the board of county commissioners of Pipestone County merging two school districts.
Common School District No. 57 of Pipestone County contains 5 1/2 sections of land within its boundaries. At the commencement of this proceeding there were 41 persons residing in the district, of which 29 persons were freeholders. Independent Consolidated School District No. 1 of Pipestone County is a consolidated school district surrounding the city of Pipestone. Pipestone is a county seat having a population of approximately 5,000 people. More than 1,200 children attend school in that district.
On July 16, 1954, a petition was presented to the board of county commissioners of Pipestone County, signed by more than 20 percent of the freeholders of district No. 57, requesting that that district be merged with district No. 1. The petition was submitted pursuant to M.S.A. 122.09. It was signed by seven persons, of whom four actually lived in the district, the other three living in the city of Pipestone but having land in the district. The petition lists the names and ages of all school children in district No. 57. Among other things, it states that the reason for merging the two districts is that Common School District No. 57 does not and cannot operate a high school and cannot provide a high school for children of school age in it within a reasonable distance of their homes. The petition was approved by the county superintendent of schools "So that the high school students of Dist. No. 57 can attend high school in Pipestone."
Notice was duly given by the county board as required by law, and, pursuant thereto, a hearing was held on August 5, 1954. Thereafter the board found, among other things, that the petition was signed by 20 percent of the freeholders of district No. 57; that the *112 petition was approved by the county superintendent of schools; that there were 29 freeholders in district No. 57 and 41 persons resident therein; that district No. 1 had consented to the merger; that district No. 57 cannot operate a high school; and that it was for the best interests of the residents and children of school age in district No. 57 and district No. 1 to have the two districts merge. Thereupon the county board entered its order merging the two districts. No one appeared in opposition to the petition at the hearing before the county board.
Thereafter, an appeal was taken to the district court from the order of the county board. In a memorandum attached to its original findings of fact, conclusions of law, and order for judgment, the trial court found that the signers on the petition were sufficient to give the county board jurisdiction. Thereafter an order was made amending the findings of fact by providing:
"* * * Said petition did not contain a correct description of the territory included in said District No. 1 nor did it state the number of persons residing therein or the names and ages of all children of school age also residing therein, as required by M.S.A. Sec. 122.06,"
and further:
"That said Board of County Commissioners had no jurisdiction to make said order of August 5, 1954, and in purporting to do so said Board of County Commissioners exceeded its jurisdiction."
The court also found that it was not for the best interests of the territory affected that such merger be consummated.
The appeal here involves principally the question whether the petition was sufficient to give the county board jurisdiction and whether the evidence sustains the court's findings that it was against the best interests of the territory affected that such merger be consummated.
1. M.S.A. 122.09, under which this petition was filed, reads:
"Where it is desired to change the boundary of a district, or to annex another district, or to merge one or more districts in an existing district, the boundary change, merger, or annexation may be effected by the filing of a petition signed by at least 20 percent of the *113 freeholders of the district which is to be merged in or annexed, in whole or in part, to another district, and otherwise proceeding in the manner prescribed for the formation of districts. In addition, the boundary change, merger, or annexation, must be approved by the school board of the district to which the other district or area is to be attached."
It is the contention of respondent, and apparently it was the opinion of the trial court when it amended its findings, that under § 122.09 the petition must conform to §§ 122.05 to 122.08, which deal generally with the subject "Formation of Districts," and that, under § 122.06, among other things, it is necessary to list the names and ages of all school children residing within both districts. Much the same argument was advanced in Independent School Dist. No. 36 v. Independent School Dist. No. 68, 165 Minn. 384, 206 N.W. 719. That case involved the construction of G.S. 1923, § 2748, which is the predecessor of M.S.A. 122.09. G.S. 1923, § 2744, is the predecessor of § 122.06 and is identical with it. Section 2748, as far as material here, read:
"By like proceedings, and upon petition of the majority of the freeholders of each district affected, qualified to vote at school meetings, the boundaries of any existing district may be changed, or two or more districts consolidated, or one or more districts annexed to an existing district."
In the above case we said (165 Minn. 388, 206 N.W. 720):
"* * * As we understand, it is appellant's contention that section 2677 [G.S. 1913] [G.S. 1923, § 2748], as amended, used the words `by like proceedings' and therefore the petition is insufficient and of no force because it does not conform to sections 2743 and 2744, G.S. 1923. It is argued that the words `by like proceedings' refer back to the sections of the statute last cited with special reference to the petition, that is, that the words `by like proceedings' have the same meaning as by like petition. We do not so construe the statute.
"The purpose of the petition is to form and put into operation a legal proceeding for the purpose of enabling the board to examine *114 into the proofs, inquire into the facts and the feasibility of the proposed project and to act thereon, and make a decision which, in their judgment, is for the best interests of the territory and all of the citizens concerned, in accordance with the purpose of the statute."
The language of that statute (G.S. 1923, § 2748) was changed by L. 1941, c. 169, art. 3, § 9, to read as follows:
"Upon petition of the majority of the freeholders of each district affected, qualified to vote at school meetings, and elections, and otherwise proceeding in the manner prescribed for the formation of districts, the boundaries of any existing district may be changed or two or more districts united, or one or more districts annexed to an existing district." (Italics supplied.)
As far as material to the question now under consideration, it has remained the same since that time. Among the definitions of "otherwise" found in Webster's New International Dictionary (2 ed.) (1947) p. 1729, is "In other respects." Applying that definition to the language of § 122.09, it should be construed as if it read: "in other respects than as to the petition, the proceeding shall be in the manner prescribed for the formation of districts." As so construed, the jurisdictional requirements of a petition under § 122.09 are met when the requisites of that section are complied with, without reference to § 122.06. So construed, the petition here was sufficient to give the county board jurisdiction.
2. The remainder of the appeal raises the question whether the evidence sustains the court's order setting aside the order of the county board for the reason that the merger is against the best interests of the territory affected.
We recently have had occasion to reconsider the rules applicable to an appeal of this kind in In re Consolidation of Certain School Districts, Freeborn County, 246 Minn. 96, 74 N.W. (2d) 410. We need not repeat what was said there. It is enough for this decision to say that the district court on appeal does not try the case de novo, and it is only when the evidence shows that the action of the county board was so arbitrary or unreasonable that it can be said that the *115 board has abused the legislative discretion vested in it that the action of the county board may be set aside by the court.
3. The trial court found, among other things:
"A majority of the freeholders, both resident and nonresident, of the electors and of the residents of said District No. 57 are and at all times material herein have been opposed to its being consolidated with, annexed to or merged with or into said District No. 1."
In its memorandum the court said:
"* * * By the terms of the statute the number of signers was sufficient to give the County Board jurisdiction to hear such petition. However, the court is of the opinion that notwithstanding the jurisdiction of the board to hear such petition it cannot fairly be said that the merger of a district where such merger lacks the support of more than 75 percent of the freeholders of such district is for the best interest of the people of such district. A contrary ruling would, it seems to the court, indicate that if the statute said 10 percent of the freeholders was sufficient, or that only one or two freeholders of the district might petition for merger, that the County Board could then properly hold that the merger was for the best interest of the people of the district and such order of the board would have to be sustained. In the opinion of the court such results should be inconceivable."
There is no evidence in the record to sustain the court's finding quoted above. Apparently the court concluded that all who had not signed the petition were opposed to it. That does not necessarily follow, and, even if the finding found support in the record, it would not justify setting aside the action of the county board. It is competent for the legislature to place the authority for making the determination as to the best interests of the territory affected where it sees fit.[2] The wisdom of the legislation is no *116 concern of the court as long as it stays within the constitution.[3]
Prior to 1947, § 122.09 required a petition signed by a majority of the freeholders of each district affected qualified to vote at school meetings and elections in order to institute a proceeding for such merger. By L. 1947, c. 249, this requirement was reduced so that the petition was then sufficient if it was signed by "not less than 20 per cent of the freeholders of each district affected." By L. 1953, c. 591, this again was changed so as to render a petition sufficient if it is signed by at least 20 percent of the freeholders of the district which is to be merged in or annexed in whole or in part to another district. In order to replace the former requirement that the petition must be signed by 20 percent of the freeholders of each district affected, an additional requirement was added that the merger must be approved by the school board of the district to which the other district or area is to be attached. That is how the law stood at the time this petition was signed. Once a petition, sufficient under the statute, is filed, the authority rests with the county board to determine whether it is for the best interests of the territory affected to consummate the merger. Under some other sections the final authority is vested in the people by their vote to determine whether there shall be a consolidation of districts.[4] Whether the authority for making this determination should be vested in the county board or should rest with the people is a matter which lies within the discretion of the legislature.
4. The only evidence in this record to sustain the court's findings that the merger was against the best interests of the territory affected is the opinion of four witnesses called by the appellants in the district court, who stated that they did not believe that it would be for the best interests of district No. 57 to merge with district No. 1. Their reasons are as follows:
*117 Andy Carlson, who was a freeholder in district No. 57 and treasurer of the school district board, testified as follows:
"Q. Mr. Carlson, state whether you consider it to be for the best interest of District No. 57 to be merged with District No. 1 Pipestone?
"A. I do not.
"Q. Tell us why?
"A. I think the kids as far as the eighth grade will learn faster in the country and may do better when they come to town."
Louis H. Hubner, who was a resident of district No. 57 but apparently owned no land therein, testified as follows:
"Q. State whether you consider it to be against the best interest of District No. 57 to merge it with Independent Consolidated District No. 1, Pipestone?
"A. Yes, I do.
"Q. Tell us why?
"A. Main reason the long bus ride for the little children among the older group."
Mrs. Lila May Hubner, who at that time had no children attending school, testified as follows:
"Q. State whether you consider it to be for the best interest of District No. 57 to be merged with Independent District No. 1.
"A. Definitely not.
"Q. Why?
"A. My daughter will start school next year and I cannot see her on the bus pestered by the big kids and getting an hour bus ride before arriving in school."
Mrs. Eugenia Coburn testified as follows:
"Q. * * * State for the record whether you consider it for the best interest of District No. 57 to merge with Pipestone Independent District No. 1?
"A. I would not like to be merged.
"Q. Tell us why?
*118 "A. I believe in the community and want these children to grow up in the school because most of them still live in the district, has farmers in the district and we have found out grand parents that have sent their grand children to that school and that means a lot to the children."
There is also some evidence from which it might be inferred that district No. 57 has a school building which is adequate for the purpose of holding grade school. Obviously, the testimony in this record is insufficient to set aside the order of the county board under the rules we have stated in matters of this kind. In the county board's determination whether a merger of this kind is for the best interests of the territory affected, one of the paramount considerations is the welfare of the children of school age in the territory.[5] In Common School Dist. No. 85 v. County of Renville, 141 Minn. 300, 303, 170 N.W. 216, 218, we said with respect to evidence similar in nature to that offered in this case:
"* * * We find in the increased rate of taxation (several mills), in the occasional bad roads or stormy weather, in the unanimous opposition of the inhabitants of the affected territory, no sufficient reason for declaring as a matter of law that the annexation of the territory was an abuse of the legislative discretion vested by the state in the county board. * * * The legislature must also have had in mind the fact that such annexations or consolidations might and in all probability would meet with opposition from those residing in the outlying territory, and, to avoid complications in that respect, the petition of the legal voters of the village district was alone made a sufficient reason for entertaining the proceedings."
Even if we accept all these opinions as an expression of the majority of those living in district No. 57, which we can hardly do, it still would not justify setting aside the order of the county board. We are convinced that the evidence here is wholly insufficient *119 to justify the findings and order of the trial court, and the judgment must be reversed.
Reversed.
NOTES
[1] Reported in 74 N.W. (2d) 419.
[2] State ex rel. Common School Dist. No. 19 v. County of Mower, 150 Minn. 163, 184 N.W. 791.
[3] Common School Dist. No. 85 v. County of Renville, 141 Minn. 300, 170 N.W. 216; In re Dissolution of Independent School Dist. No. 27, 240 Minn. 257, 60 N.W. (2d) 617.
[4] See, §§ 122.21 and 122.22.
[5] In re Dissolution of Independent School Dist. No. 27, 240 Minn. 257, 60 N.W. (2d) 617.