IN RE PETITION OF MINNEAPOLIS AREA DEVELOPMENT
CORPORATION TO HAVE ITS LAND SET OFF FROM
COMMON SCHOOL DISTRICT NO. 1870 AND ATTACHED
TO INDEPENDENT SCHOOL DISTRICT NO. 720,
SCOTT COUNTY.

131 N. W. (2d) 29.

August 21, 1964—No. 39,033.

Michael E. McGuire, Peter S. Popovich, and Peterson & Popovich, for appellants.

Lindmeyer & Lindmeyer, Kermit J. Lindmeyer, Faegre & Benson, John S. Holten, and Paul T. Birkeland, for respondents.

NELSON, JUSTICE.

On November 15, 1960, the Board of County Commissioners of Scott County entered orders detaching certain lands from Common School Districts Nos. 1870, 1897, and 1871, and annexing such lands to Independent School District No. 720 (hereinafter referred to as the Shakopee district).

Appeals were taken to the District Court of Scott County from the orders by the common school districts[1] and appellants John Clark, Sylvester N. Gerold, and Harold A. Snyder, who are landowners in Districts Nos. 1871 and 1897. Intervention was granted to the Shakopee district and to the petitioners, Minneapolis Area Development Corporation, American-Wheaton Glass Corporation, Owens-Illinois Glass Company, Minnesota Valley Natural Gas Company, F. H. Peavey & Company, Forest Products Corporation, and Air Products of Minnesota, Inc.

After consolidation and trial of the appeals, the district court entered its order affirming the orders of the county board. This appeal, pursuant to Minn. St. 127.25, is from that order and from the subsequent

---

[1] The appeal of Common School District No. 1870 was dismissed before trial.

order of the district court denying appellants' motion for amended findings or a new trial.

The primary questions involved on this appeal are (1) whether the county board must hear and determine petitions for dissolution and attachment before it hears and determines petitions for detachment and annexation when the several petitions are filed nearly simultaneously and are all presented to the board at approximately the same time; (2) whether the county board is required to make findings of fact before it makes an order for detachment and annexation under § 122.21, subd. 4; (3) whether the evidence reasonably supports the findings of the trial court and its conclusion that the county commissioners did not rely on any erroneous theory of law in entering their orders for detachment and annexation; (4) whether the action of the county board in granting the petitions was arbitrary or in unreasonable disregard of the interests of the territory affected; and (5) whether county commissioners were adverse witnesses.

Viewing the evidence in the light most favorable to the intervenors as the prevailing parties below, the facts are as follows: Intervenor Minneapolis Area Development Corporation (hereinafter referred to as MADC) is the owner of a tract of land in Scott County, which it had purchased for industrial development under the name Valley Industrial Park. This tract originally consisted of some 2,275 acres but MADC, in addition to dedicating small tracts for public easements and utilities, sold parcels to Owens-Illinois Glass Company, F. H. Peavey & Company, American-Wheaton Glass Corporation, and, after the commencement of the proceedings here in question, to Air Products, Inc., for business development. When these proceedings were commenced Owens-Illinois had built a box board plant, American-Wheaton had started construction of a plant to make glass containers, and the Peavey company had under consideration the construction of a grain terminal on the Minnesota River. The balance of the land held by MADC is about 2,125 acres, all of which was rented to tenant farmers.

Valley Industrial Park is located immediately east of the city of Shakopee and is east of and adjoins the Shakopee school district. The tenant-farmed tract constituted a part of Common School Districts Nos.

1870, 1871, and 1897. The lands acquired by Owens-Illinois, American-Wheaton, Peavey, and Minnesota Valley Natural Gas were all located within District No. 1897.

Districts Nos. 1870, 1871, and 1897, as well as other common school districts to which they sought attachment, were closed rural districts from which children of school age had been sent to the Shakopee school district on a tuition basis over a period of years. These school districts lie east, south, and west around the Shakopee district.

On February 8, 1960, the Shakopee school board resolved that it would continue to accept tuition students from the rural districts during the 1960-1961 school year but not thereafter. On February 16, 1960, a copy of the resolution and a letter was sent to each of the rural districts. On August 30, 1960, the rural districts asked for an extension of the cut-off date. Meetings were held between representatives from the boards of the rural districts and the Shakopee district to discuss the request and to ascertain whether the rural districts were taking steps to build an elementary school.

Representatives from the Shakopee district in July 1960 had requested owners of property in Valley Industrial Park to consider having their properties attached to the district. Pursuant to § 122.21, on September 15, 1960, MADC made, and on September 16 filed with the county auditor, a petition to have its land detached from Common School Districts Nos. 1870, 1871, and 1897, and annexed to the Shakopee district. This petition was received by the county auditor in the morning mail on September 16 but before this mail had been opened, Mr. Michael E. McGuire, counsel for appellants, in person filed petitions pursuant to § 122.22 for the dissolution of Districts Nos. 1871, 1876, 1891, and 1897, and for their attachment ultimately to Common School District No. 1872. He later filed a petition for dissolution of Common School District No. 1873 and its attachment to District No. 1872. On September 20, 1960, petitions for detachment and annexation of lands under § 122.21 were filed by American-Wheaton, the Peavey company, and Minnesota Valley Natural Gas, and on November 3, 1960, by Owens-Illinois with the county auditor, all in substantially the same form as the MADC petition.

After a hearing on November 15, 1960, the petitions of MADC, American-Wheaton, the Peavey company, Minnesota Valley Natural Gas, and Owens-Illinois were granted by order of the county board on the same date. Pursuant to § 127.25 appeals were then taken to the district court from the orders of the county board by appellants. On December 6, 1960, the county board also granted the several petitions of the common school districts for dissolution and attachment, and no appeals were taken from this action.

At the pretrial conference the court ordered appellants to specify the grounds for the assertions in their notices of appeal that the county board did not have jurisdiction and had exceeded its jurisdiction in granting the petitions. After further investigation appellants waived questions of jurisdiction. The questions whether the action of the county board had proceeded according to an erroneous theory of law and whether its action was arbitrary were preserved.

The trial court made findings as to all jurisdictional facts. It also found that the county board heard and received the evidence offered for and against the several petitions, including a statement of one Mr. Hendrickson, a representative of the State Department of Education, whom the board had asked to attend and to advise it; that the petitioners and objectors were represented by counsel and that the hearing was fairly and fully conducted; and that the hearing and the county board meeting held thereafter, at which the petitions were approved, were open to the public. It also found that the county board based its decision on what it considered to be for the best interests of the territory affected, particularly the education of the children in Common School Districts Nos. 1870, 1871, and 1897, and the Shakopee district. The court held also that the action appealed from was not based upon an erroneous theory of law.

On the central issue of the case as it was presented and tried below, the court found that the action of the county board was not arbitrary, fraudulent, capricious, or oppressive or in unreasonable disregard of the best interests of the territory affected but was fair and reasonable under the circumstances. The trial court also found that:

"The County Board could fairly and reasonably find that Common

School Districts Nos. 1870, 1871 and 1897 had not operated schools for many years; that the children residing in such districts had attended the public elementary and secondary schools in the City of Shakopee maintained and operated by Independent School District No. 720 on a tuition basis; that Independent School District No. 720 would permit these children to continue to attend on such basis if the additional taxable and valuable properties of Petitioners-Intervenors were annexed to it; that the burden of educating children of the employees of Owens-Illinois Glass Company and American-Wheaton Glass Corporation and of other new industries attracted to the industrial park comprised of Petitioners'-Intervenors' lands would fall first and primarily on Independent School District No. 720; that the Petitioners-Intervenors sought annexation because they desired good public schools for employees' children and a stable tax climate even though the immediate effect of annexation would be to raise their school taxes substantially; that there were insufficient public school children residing in Common School Districts Nos. 1870, 1871, and 1897, and in No. 1872 and the other rural districts asking for attachment of their territory to No. 1872, then or for an indeterminable period in the future, to permit such districts to construct and operate high school facilities under the minimum standards of the State Department of Education; that such Common School Districts had made no other plan for high school education of their children; that the annexation of Petitioners'-Intervenors' lands to Independent School District No. 720 would not necessarily result in the removal of so much taxable value from the rural districts as to prevent them from raising sufficient taxes to maintain and operate schools; and that the quality of education provided by Independent School District No. 720 at both elementary and secondary school levels would be better than the quality of education which could then or for an indeterminable period in the future be provided by the rural districts."

■ An order of a county board in detaching land from a school district and attaching that land to another school district is a legislative act. Accordingly, the scope of judicial review is controlled by well-established principles. Under Minn. St. 127.25, as well as under the constitutional principle of separation of powers, the function of the trial

court on an appeal from such an order is limited to determining whether the board had jurisdiction; whether it exceeded its jurisdiction; whether its order was based on an erroneous theory of law; and whether the action taken was arbitrary or unreasonable. The trial court cannot try the case de novo nor can it substitute its judgment for that of the county board.

The scope of review of this court is in turn limited to determining whether the trial court has confined its review to the limited scope of such review and whether, aside from jurisdictional questions, the evidence reasonably supports the determination of the trial court. These rules were fully stated in In re Certain School Dists. Freeborn County, 246 Minn. 96, 103, 74 N. W. (2d) 410, 415, which both sides in this appeal have cited as controlling. As intervenors point out, however, the facts in the Freeborn County case are distinguishable from the facts in this case.

■ Appellants contend that the principle of priority of proceedings required the county board to act upon the dissolution and annexation petitions before it acted upon and granted petitions for detachment and annexation. In In re Dissolution of School Dist. No. 5, 264 Minn. 428, 120 N. W. (2d) 319, this court held that where a board of county commissioners ordered dissolution of a school district within the county and attachment of the lands of such dissolved district to a district lying partly within an adjoining county, and the board of county commissioners of the latter county, properly acting in its legislative capacity, approved and ordered such attachment, the mere fact that the original petition for dissolution was not placed on file with the board of the latter county would not invalidate its proceedings and order.

In Smith v. Board of Education, 97 Ohio App. 507, 127 N. E. (2d) 623, the county board of education by resolution dissolved three districts and established a new one embracing their territories. It was argued in that case that the action by the board was precluded by the pendency of a petition requesting the transfer of certain territory of one of those districts to a fourth district. The Ohio court said (97 Ohio App. 510, 127 N. E. [2d] 626):

"* * * It is urged that the pendency of this petition precluded the

defendant board from taking its action of June 9, 1953. We have been cited to no rule, principle or case to support this contention—and we know of none. The order in which pending business should be disposed of was certainly within the sound discretion of the board, in the absence of some statutory provision either expressly or impliedly restricting such discretion."

It would thus appear that the order in which pending business before the county board should be disposed of is ordinarily in the discretion of the board. Suffice it to say that the legislature could, but did not, establish a principle of priority in cases like the one before us. It provided only that petitions for detachment and annexation and for dissolution and attachment must be filed with the county auditor to present at the next meeting of the county board and that the board must then fix a time and place for hearing them. Minn. St. 122.21 and 122.22.[2]

■ In In re Dissolution of School Dist. No. 33, 239 Minn. 439, 450, 60 N. W. (2d) 60, 67, we said:

"* * * When a board of county commissioners is acting in proceedings for the dissolution, attachment, or consolidation of school districts it is exercising a legislative function which is not governed by judicial standards and its determinations are subject to successful attack only when its action is clearly arbitrary, unreasonable, unjust, or against the best interests of the public."

■ Appellants contend, however, that the evidence does not justify the board's orders or the decision of the trial court affirming them and that both the board and the trial court relied upon erroneous theories of law. Intervenors contend that the board acted entirely within its legislative discretion in granting the petitions of MADC and the other intervening petitioners.

---

[2]It will be noted that the legislature did establish a principle of priority as between petitions for detachment and annexation under Minn. St. 122.21, and consolidation proceedings under § 122.23. Minn. St. 122.21, subd. 4. See, also, § 122.22, subd. 7, relating to consolidations and proceedings for dissolution and attachment, and § 122.23, subd. 5.

There were competing concepts on both sides of the dispute before the county board with respect to population impact, rate of growth, and the chances of suitable education for the rural children in a separate school district completely divorced from the city district, as well as conflicting interests in matters of taxation and political control. Evidence concerning them was fully presented to the board and it made its decision only after there had been a full hearing. Upon the evidence presented to it the trial court correctly determined that the county board had acted within its legislative discretion. In Farrell v. County of Sibley, 135 Minn. 439, 443, 161 N. W. 152, 153, this court said:

"* * * The evidence presented leaves the matter of the propriety of the proposed change, in our view thereof, in much doubt, and this alone precludes interference by the court with the action of the legislative body."

See, also, In re Certain School Dists. Freeborn County, *supra.*

Appellants contend that the county board and the trial court acted upon and relied on an assertedly erroneous theory of law by assuming on the basis of certain statements in intervenors' petitions that the Shakopee district would be required to permit children of the rural area to continue their education uninterrupted. That contention ignores § 124.50, which provides:

"Any person of school age residing in a district in which no classified secondary school or area vocational-technical school is maintained is entitled to attend such school outside his resident district under regulations established by the state board."

However, we think the trial court was entirely correct in holding that the county board did not act upon any erroneous theory of law. The words "legal right" or their equivalent do not appear in the paragraphs of the petitions touching upon attendance of the children from the rural districts at Shakopee. The petitions stated that the Shakopee district has resolved not to accept "the nonresident children," which negates any thought that the district or the petitioners believed that it had a legal obligation to accept those children. The petitions stated the reason for the action of the Shakopee district, namely, shortage of

facilities, and represented that annexation of the petitioners' lands would provide substantial additional valuation and thereby permit the Shakopee district to provide the needed additional facilities without an increase in the mill rate and thus remedy the occasion for the Shakopee school board's action. An examination of the record further indicates that none of the county commissioners testified to an understanding that the law required the Shakopee district to receive nonresident students.

Appellants point out that the rural districts had a legal obligation to provide for the education of their children. There is no evidence in the record that any contrary contention was made before the county board or that the county board believed otherwise. However, that argument is beside the point, since the problem facing the county board was how that education could best be provided—particularly high school education, since under the standards of the State Department of Education the rural districts could not establish a high school. It is arguable that the county board took the only sensible course available; reasoning that the Shakopee school board would, if given the means, enlarge its high school and make it available to rural students in the surrounding area. The board's action with respect to this problem does not impress us as being either arbitrary or unreasonable.

We also think that the evidence reasonably supports the finding of the trial court that the county board could reasonably find that the burden of educating children of employees of Valley Industrial Park industries would fall first and primarily on the Shakopee district. Appellants contend that this finding is not supported by the evidence but is contrary to it and that the trial court erroneously applied the rationale of Sartell v. County of Benton, 149 Minn. 233, 183 N. W. 148, which is that industry attracts employees and therefore should provide taxes to support the schools where those employees primarily live.

In considering the testimony we must bear in mind the location of Valley Industrial Park—it lies immediately east of the Shakopee district and immediately east of the city of Shakopee in Eagle Creek Township, on the south bank of the Minnesota River—and that there is no incorporated community near the park except Shakopee, although the

tract is not located far distant from the Twin Cities and their immediate suburbs. With these circumstances and the rationale of the Sartell case in mind, the testimony in the record sufficiently supports the findings of the trial court.

Another contention advanced by appellants is that the county board relied on an erroneous theory of law presented by a statement in the petitions, reading as follows:

"* * * The per capita tax levy limitations in Section 275.12, Minnesota Statutes, would prevent any or all of these Common School Districts from providing adequate funds for the erection and operation of school buildings by those districts so as to provide adequate education for the children in those districts."

The pertinent part of subd. 1 of the statute referred to, Minn. St. 1957, § 275.12, reads as follows:

"The total amount of taxes levied by and for any school district in the state for all general and special school purposes including the county school tax of one mill, required to be levied by the statute, but exclusive of any state levy, income tax apportionment or other aids, shall not exceed in any year the greater of: (a) $315 per resident pupil unit in average daily attendance in kindergarten and grades one to twelve, inclusive, plus the amount of any levies for bonds issued and interest thereon, such pupil units in average daily attendance to be computed in accordance with Minnesota Statutes [1953] section 128.081, or (b) the following amounts per capita of the population of the district: in districts having a population in excess of 5,000 and operating schools in more than four villages or cities, the greater of $540,000 or $103 per capita; in districts not within the foregoing class but having a population in excess of 5,000, $92 per capita, but not less than $142,000 plus $73 per capita; in districts having a population in excess of 2,750 and not more than 5,000, the greater of $330,000 or $108 per capita; in districts having a population of 2,750 or less, $110,000 plus $81 per capita."

Subd. 2 of this statute provided for minor corrections to reflect changes in the consumers price index and subd. 3 provided for alterna-

tive computations for census figures, but there is no evidence relating to these matters in the record. The other subdivisions do not apply.

The record establishes that the county board did not rely on any erroneous theory of the per capita tax limitation law. The petitions involved must be read as a whole and considered in the light of the situation at the time of the hearing. When the annexation petitions were prepared, there were no petitions on file for dissolving and attaching Common School Districts Nos. 1870, 1871, and 1897 or any other pending proceeding for their consolidation. The statement quoted from the petitions refers to the difficulties the three districts or any one of them would have in providing an adequate education for their children. By the time the hearing was had on November 15, 1960, the appellants proposed a combined district including those districts plus five other rural districts and suggested an elementary school proposal for the combined district. Clearly, there had been a change in the situation which existed when the petitions were prepared, and that is the most likely reason there was no evidence that any mention was made at the hearing respecting the effect of the per capita tax limitation law on any of the three rural districts involved. The record indicates that the commissioners could not recall having relied on the statement. One said he considered it but felt the rural districts could operate a school without the land sought to be annexed to the Shakopee district.

Dr. Otto Domian, professor of education at the University of Minnesota and director of the Bureau of Field Studies and Surveys, which is a department in the College of Education of the University, testified that while the combined common school districts could establish an elementary school, the education so provided would not, in his opinion, meet minimum standards for a sound elementary school. He further testified that they could not operate an adequate secondary school. The court found that the board properly could find that the common districts had no plan even at the time of the hearing for secondary education. The record clearly establishes that the trial court could reasonably find that the county board did not rely on an erroneous theory of the per capita tax limitation law.

■ Appellants contend that after the public hearing held in the

courtroom in the courthouse at Shakopee on November 15, 1960, the county board returned to its chambers where it adopted its orders granting the petitions of the intervenors and that this constituted a private meeting of the board contrary to the provisions of Minn. St. 471.705. The trial court found that the hearing and the meeting of the county board was open to the public. After the public hearing had been concluded, the board went to the commissioners' room in the courthouse to go over the matter, but the record shows that the doors to the room were open and that it has places for the public to sit. While the record indicates that the public was not expressly invited to attend, no one was told that he could not. Any interested person must have known that the commissioners were meeting in the commissioners' room, their usual meeting place. Appellants apparently contend that the commissioners must not only give notice of the hearing but must also give notice of and an invitation to attend the board's deliberations. That is not required. The Minnesota public meeting statute, unlike such laws in certain other states, does not itself provide for notice to the public of all scheduled meetings. Section 122.21, subd. 3, provides that notice of the hearing must be posted and published, but subd. 4 merely provides:

"Within six months of the time when the petition was filed, the county board shall issue its order either granting or denying the petition * * *."[3]

In our view, the record is clearly sufficient to support the finding of the trial court.

■ Appellants claim that the board's action was based upon an erroneous theory that findings of fact were not required.

Our statutes could provide for a quasi-judicial type of hearing before the county board but they do not. The Minnesota Administrative Procedure Act applies only to boards and the like "having a statewide jurisdiction." Minn. St. 15.0411, subd. 2. The Minnesota Municipal

---

[3]Even if the public had been excluded it would not necessarily follow that the order of the county board was invalid. See, *Open Meeting Statutes: The Press Fights for the "Right to Know,"* 75 Harv. L. Rev. 1199, 1212.

Commission, which acts on incorporation, annexation, and detachment proceedings for cities and villages, is given power to issue subpoenas and is required to make findings after hearing. See, §§ 414.01, subd. 8, and 414.04. Our Education Code, however, does not provide that similar rules of procedure govern the county board's hearings in dissolution and attachment or detachment and annexation proceedings. The legislature has undoubtedly been fully aware of the informal nature of such hearings before county boards and that appeals in school district cases have always been heard by the district courts on new evidence and never on a transcript of the proceedings before, or formal findings by, the county board. See, Common School Dist. No. 2386 v. County of Wabasha, 265 Minn. 398, 121 N. W. (2d) 767; Sartell v. County of Benton, 149 Minn. 233, 183 N. W. 148; Farrell v. County of Sibley, 135 Minn. 439, 161 N. W. 152; In re Merger of Certain School Dists. Pipestone County, 246 Minn. 110, 74 N. W. (2d) 419; Sorknes v. Board of County Commrs. 131 Minn. 79, 154 N. W. 669; In re Appeal of Consol. School Dist. No. 16, 179 Minn. 445, 229 N. W. 585. In the Wabasha case, as long before in the Sorknes case, the court noted that proceedings before the county board are informal. With this history, the Education Code cannot be read as expressing a legislative intent to change the nature of the proceedings before the county board or the appellate proceedings before the district court. The legislature has prescribed with respect to dissolution and attachment proceedings initiated by resolution of the county board that the resolution "shall contain findings of necessary jurisdictional facts and shall set a date for hearing not less than ten nor more than 60 days from the date of the resolution." § 122.22, subd. 3. The legislature, however, has not required findings of fact after the hearing on petitions for dissolution and attachment under that section, nor after a hearing on a petition for detachment and annexation under the preceding section. See, § 122.21, subd. 4. This court should require no more.

It may be noted also that appellants have waived any objection to the absence of findings by the board. There is no showing of any demand for a transcript or findings at the board's hearing and appellants

failed to assign or argue the question of a lack of findings on the appeals to the district court.

 Appellants' principal contention in the court below was, pursuant to § 127.25, subd. 1(3), that "the action appealed from is arbitrary, fraudulent, capricious or oppressive or in unreasonable disregard of the best interest of the territory affected." The trial court found to the contrary.

Minn. St. 122.21, subd. 3, prescribes a code of procedure for the county board:

"The petition shall be filed with the auditor who shall present it to the county board at its next meeting. At the meeting, the county board shall fix a time and place for hearing the petition, which time shall be not more than 60 nor less than ten days from the date of the meeting. The auditor shall forthwith serve notice of the hearing on each district directly affected by the petition, by mail addressed to the clerk. If any area affected by the petition is in another county, he shall mail a notice of hearing to the auditor of such county. He shall also give one week's published notice of the hearing in the county wherein the hearing is to be held, and ten days' posted notice in each school district affected. Such posted and published notice may combine pending petitions. At the hearing on the petition, the county board shall receive and hear any evidence for or against the petition. The hearing may be adjourned from time to time."

The record shows that the county board followed the required procedure by giving full posted and published notice, which resulted in a large attendance at the hearing. Evidence was heard on the several petitions for about three hours. Appellants, represented by their counsel, presented evidence in support of their petitions. The board had before it the appellants' petitions, their elementary school proposal, the area map, and, in addition, it heard statements from several witnesses in their support. After appellants had concluded their presentation, Whitney Eastman, then executive director of MADC, and its counsel presented evidence and arguments in support of the petitions for annexation of Valley Industrial Park to the Shakopee school district. Appellants' counsel also spoke in opposition to the petitions for annexa-

tion. The chairman asked whether anyone else present cared to make a statement. Several people from the rural districts responded with statements. A representative of the Shakopee district reported that its board supported the granting of the Valley Industrial Park petitions and would receive all or part of the rural districts into the Shakopee district. Mr. Hendrickson of the State Department of Education then made a statement. No further evidence being offered, the hearing was concluded and the board proceeded to its deliberations, which lasted about 45 minutes. It then acted on the evidence presented, granting the Valley Industrial Park petitions but taking no action on appellants' petitions at that time.

The record indicates that the county board not only followed the procedure established by the statute but also had invited the State Department of Education to send a representative—Mr. Hendrickson—to assist in an advisory capacity on the petitions. The board no doubt believed at the conclusion of the hearing that appellants had presented all facts they deemed relevant, especially since they failed to ask for an adjournment in order to present further evidence. The board was familiar with the areas involved in the petitions before it. They knew that there were approximately 60 public school students in Common Districts Nos. 1870, 1871, and 1897. The elementary school proposal had shown to the board that there were approximately 95 students for grade school enrollment in the combined rural districts. The board knew that Valley Industrial Park had attracted industry and hoped to attract more. It had seen the plants completed or being constructed by such companies as Owens-Illinois and American-Wheaton. At the hearing Mr. Eastman told the board that MADC had petitioned for detachment and annexation because it wanted good schools and a stable, predictable tax base. Appellants produced no expert witnesses to furnish recommendations to the board contrary to those made by Dr. Domian and Mr. Eastman.

The board gave everyone present a full opportunity to be heard. There is nothing in the record to indicate that the commissioners did not approach the hearing with an open mind. It does indicate that

they decided the questions submitted on the basis of the evidence produced after a fair hearing.

Our consideration of this case must proceed upon the theory that the board was acting in a legislative capacity. See, Schweigert v. Abbott, 122 Minn. 383, 142 N. W. 723. The rule of limited jurisdiction stated in the Schweigert case is based not only on the explicit words of § 127.25 but on the constitutional principle of separation of powers.

In In re Merger of Certain School Dists. Pipestone County, 246 Minn. 110, 74 N. W. (2d) 419, a petition for merger of a common school district with a consolidated district stated that the common district could not operate a high school. The county board's order effecting the merger was affirmed even though there was evidence that the common district's grade school was adequate. In Melby v. Hellie, 249 Minn. 17, 80 N. W. (2d) 849, this court sustained a similar order for like reasons. See, also, In re Dissolution of Independent School Dist. No. 27, 240 Minn. 257, 60 N. W. (2d) 617.

It is significant that a member of the Shakopee school board stated at the hearing before the county board that the Shakopee district was interested in annexation of the rural districts to it. The county board by the orders of November 15, 1960, was attempting to solve the high school problem. Only after appellants filed a further petition indicating to the county board that they wanted to be separate from the Shakopee district and establish their own elementary school, did the county board grant appellants' petitions.

The Sartell case is not on all fours with this case since it cannot be said the people now living in the Shakopee district are there largely because of Valley Industrial Park. However, since the board could justifiably find that the burden of educating children of employees of the industries located there would fall primarily on the Shakopee district, the Sartell case is authority for the proposition that Valley Industrial Park should contribute to the support of the Shakopee schools.

The evidence supports the findings of the trial court that the county board could reasonably find that annexation would permit necessary school expansion in the Shakopee district and that the Shakopee district would provide high school education to children residing in the com-

mon school districts; that there were, and for an indeterminable period in the future would be, insufficient numbers of public school children residing in Common School Districts Nos. 1870, 1871, 1872, and 1897 and the other rural districts asking for attachment to District No. 1872 to permit such districts to construct and operate high school facilities meeting the minimum standards of the State Department of Education; and that such common school districts had made no other plans for high school education of their children. We conclude that the board did not act arbitrarily, oppressively, or in unreasonable disregard of the best interest of the territory affected.

■ The trial court held that the members of the county board were not witnesses adverse to appellants and would not permit them to cross-examine one commissioner as an adverse witness. This was correct, but appellants were nevertheless permitted to ask leading questions extensively.[4]

Appellants' objection with respect to the trial court's admonition to their counsel respecting the form of a question put to one of the commissioners need not be considered on this appeal since it was not assigned as error in the motion for amended findings or a new trial. However, the court's statement was not prejudicial.

We have carefully considered all other assignments of error raised by appellants but do not consider it necessary to discuss them. We find no reversible error.

Affirmed.

---

[4]The commissioners may be examined as to the factors they considered in making their determination. Independent School Dist. No. 47 v. Meeker County, 143 Minn. 169, 173 N. W. 850. But the county board is not an adverse party. Kirchoff v. Board of County Commrs. 189 Minn. 226, 248 N. W. 817. See, In re Order of Superintendent of Schools, Nobles County, 239 Minn. 233, 58 N. W. (2d) 465. The county commissioners are no more adverse on an appeal from a school district boundary case than the county engineer in a drainage ditch case. See, Hemze v. County of Renville, 255 Minn. 115, 95 N. W. (2d) 596.

ON APPEAL FROM CLERK'S TAXATION OF COSTS.

On September 25, 1964, the following opinion was filed:

PER CURIAM.

Appeal from clerk's taxation of costs and disbursements in so far as it allows an item of $125 to respondents for a plat showing the location of the various school districts.

Supreme Court Rule V (222 Minn. xxx) requires appellant under certain circumstances to provide "a plat or diagram of sufficient size and distinctness to be visible to all members of this court when placed upon the court's easel." Nothing contained in this rule lays a foundation upon which the prevailing party could tax the expense thereof as a necessary disbursement. As to the $125 allowed for the plat, the clerk's taxation is reversed; otherwise it is affirmed.