IN RE APPEAL OF INDEPENDENT SCHOOL DISTRICT NO. 186 FROM ORDERS OF CROW WING COUNTY BOARD OF COUNTY COMMISSIONERS v. INDEPENDENT SCHOOL DISTRICT NO. 181. CROW WING COUNTY BOARD OF COUNTY COMMISSIONERS, RESPONDENT.

196 N. W. 2d 600.

April 7, 1972—No. 42545.

*Gordon Rosenmeier, John E. Simonett,* and *Michael P. Perry,* for appellant.

*Fitzpatrick, Larson & Fitzpatrick* and *S. G. Fitzpatrick,* for respondent intervenor.

*Erickson & Casey* and *Carl E. Erickson,* for respondent county board.

Heard before Knutson, C. J., and Murphy, Otis, Rogosheske, and Hachey, JJ.

KNUTSON, CHIEF JUSTICE.

This is a statutory appeal from orders of the Crow Wing County Board of County Commissioners dividing the assets and liabilities of Independent School District No. 185 (Nisswa), a preexisting school district, between Independent School District No. 186 (Pequot Lakes), and Independent School District No. 181 (Brainerd)—each an adjoining district into which part of the Nisswa district was consolidated. As authorized by Minn. St. 127.25, Pequot Lakes, alleging principally that the county board's division of assets was "arbitrary, fraudulent, capricious or oppressive, and in unreasonable disregard of the best interests of the territory affected," appealed to the district court. After trial and upon findings, the court upheld the division ordered by the county board. Pequot Lakes brings the matter here for review. We conclude that the record fails to establish its claims and affirm the decision of the trial court.

Consolidation, effective July 1, 1969, was approved March 3, 1969, in accordance with procedures prescribed by Minn. St. 122.23. It was accomplished with open participation of the residents of the Nisswa district and overwhelming approval of the voters of the district. In April 1969, as required by § 122.23, subd. 15, the auditor advised the Crow Wing County Board of its duty to apportion the assets and liabilities (not secured by

bonds) of the Nisswa district among the successor districts. Pursuant to subd. 15, the county board must divide the assets and the liabilities "according to such terms as it may deem just and equitable," and it "may impose a dollar claim on the district receiving the real estate in favor of any other district involved." Subd. 16 of the section mandates a division of the bonded indebtedness according to assessed valuation.[1] Pursuant to this formula, Nisswa's bonded indebtedness of approximately $300,000 was apportioned as follows: 80.78 percent ($242,340) to Brainerd, 18.47 percent ($55,410) to Pequot Lakes, and .75 percent ($2,250) to whatever district receives the portion of the Nisswa district originally proposed to be consolidated with the Pillager district.

Following a succession of separate meetings of the county board with the superintendents and school board members of Pequot Lakes and Brainerd at which an unlimited opportunity to present their positions was afforded, the board, on April 16, 1969, made its order dividing the assets and liabilities. Upon objection by Pequot Lakes as to the division of assets, the board, 5 days later, held a joint meeting with the officials of Pequot Lakes and Brainerd; heard their respective objections and contentions; and agreed to hold its April 16 division order in abeyance until an appraisal of the assets could be obtained. Two independent appraisals were ordered. Before making its final order on June 30, 1969, reaffirming its earlier order with minor changes, the board heard an oral summary of one appraiser's evaluation of the assets.[2] Prior to its consolidation, Nisswa oper-

---

[1] In the words of Minn. St. 122.23, subd. 16, "in the proportion which the assessed valuation of that part of a pre-existing district which is included in the newly created district bears to the assessed valuation of the entire pre-existing district as of the time of the consolidation."

[2] Neither appraisal was in print before the board's final order. An appraisal made by Gene Foote, which was submitted orally before the board's final order, was:

| | |
|---|---|
| School building | $573,800 |
| Bus garages | 12,300 |

ated an elementary school on a "contract" system whereby students, except for those in kindergarten through third grade, are grouped together in large rooms and each is given a contract of work and, guided by teachers, progresses according to the student's own level of achievement. Since the boundary of the enlarged Brainerd district included the Nisswa school building, the order apportioned that asset to Brainerd. The remaining assets were principally awarded to Pequot Lakes.[3]

| | |
|---|---|
| School buses and vehicles | 22,250 |
| Portable equipment | 37,260 |
| | $645,610 |

An appraisal made by Shenehon-Goodlund-Johnson, Inc., was approximately the same except that the school building, garage, and land had a value of $632,000, so the total appraisal was approximately $691,500.

[3] Contrary to Pequot Lakes' contention, we consider this final order sufficiently definite and certain.

The original order of April 16, 1969, provided:

"1. That any or all monies available on July 1, 1969 be awarded as follows:

"a. School District #: 181—Brainerd—80.78%.

"b. School District # 186—Pequot Lakes—18.47%.

"c. .75% to such district or districts which shall receive that portion of School District # 185—Nisswa—which did not consolidate with School District # 116—Pillager—as proposed.

"d. School District # 117—Pine River—None.

"2. That all current liabilities shall be paid by the school districts involved in the consolidation in the same proportion as stipulated above for the division of monies available as of July 1, 1969.

"3. That such School District which will consolidate with that portion of School District # 185 [Nisswa] which did not consolidate with School District # 116 [Pillager] as proposed in the consolidation plat shall receive one (1) 1958 Chevrolet 48 passenger bus—Serial # V6D8W1052 with Superior body.

"4. That School District # 181 [Brainerd] shall be awarded one (1) 1967 Chevrolet 60 passenger bus—Serial # SE-627F 162533 with Superior body.

"5. That the balance of the buses and travelalls shall be awarded to School District # 186—Pequot Lakes.

"6. That School District # 186—Pequot Lakes be awarded 80 desks

Using the figures of the lower of the two appraisals, Pequot Lakes argues that Brainerd received $599,360 and Pequot Lakes, $35,760 of Nisswa's assets, resulting (after subtracting bonded indebtedness assumed) in a manifestly inequitable division because, it is claimed, Brainerd received net assets of $357,020 and Pequot Lakes a net liability of $19,650. Although the county board kept no minutes of the several hearings and made no findings as to the value of the assets, the evidence submitted to the district court reveals that all of the members of the county board considered the appraisal of the school building and land as too high. Further, the board was informed that Brainerd had suspicions (for the most part later confirmed) that the Nisswa school building, the "contract" system of operation, and the reduced enrollment would prove to be a liability to Brainerd when considered in the light of Brainerd's dissimilar operation of graded elementary

---

of their choice and such textbooks and supplies as are considered necessary and mutually agreed upon by the Superintendents of School District # 181 [Brainerd] and School District # 186 [Pequot Lakes] for the students in the area consolidating with School District # 186—Pequot Lakes.

"7. That all real and personal property and all appurtenances thereto of School District # 185 [Nisswa] excepting those items listed above are hereby awarded to School District # 181—Brainerd.

"8. That delinquent taxes due as of July 1, 1969 shall be considered as taxes payable to the School District wherein such property lies after the effective consolidation date of July 1, 1969.

"9. That upon the effective date of this Order the Board of School District # 185 [Nisswa] shall comply with all the conditions of this Order.

"10. The effective date of this Order shall be July 1, 1969."

The final order of July 30, 1969, retained the April 16, 1969, order with the following amendments:

"1. Change in Item 4—One (1) Chevrolet 60 passenger bus Serial # SE-627F 162533 with Superior body is hereby awarded to S. D. # 186 [Pequot Lakes].

"2. Add Item 8-A—The present garages and equipment of S. D. # 185 [Nisswa] be awarded to S. D. # 186 [Pequot Lakes]—subject to removal from their present site."

schools. The board believed, therefore, that Brainerd was not receiving assets greatly in excess of its assumed bonded indebtedness and that Pequot Lakes was not inadequately compensated for its assumption of its share of Nisswa's bonded debt. Considering all of the circumstances known to the county board and disclosed at the hearings, all the members (save one residing in the Pequot Lakes district) shared in the belief that the division was fair and voted to approve it.

Although we have not before been confronted with reviewing a county board's order dividing assets of a preexisting school district, such division is an integral part of our statutory proceedings governing the alteration of school districts under Minn. St. c. 122 of the Education Code. That such proceedings have always been deemed a legislative function is a principle so firmly established that we refrain from citing numerous authorities.[4]

Thus, in dividing the assets, the county board exercised legislative discretion and judgment. While the board is required to act fairly and equitably, our scope of judicial review is narrowly limited by reason of the doctrine of separation of powers and by the history and language of § 127.25, subd. 1, and cases construing it.[5] Judicial interference is authorized only where the trial record establishes a manifest abuse of legislative discretion. Our function, like that of the trial court, is not to make an original determination but is solely to prevent an improper determination by exercising a check against the arbitrary exercise of legislative power vested in the county board. See, In re Dissolution of Common School Dist. No. 899, 287 Minn. 236, 177 N. W. 2d 775 (1970); In re Petition of Minneapolis Area Development Corp. 269 Minn. 157, 131 N. W. 2d 29 (1964); In re

---

[4] In re Certain School Districts, Freeborn County, 246 Minn. 96, 74 N. W. 2d 410 (1956); In re Appeal of Lego v. Rolfe, 268 Minn. 483, 129 N. W. 2d 811 (1964); In re Dissolution of Common School Dist. No. 899, 287 Minn. 236, 177 N. W. 2d 775 (1970).

[5] See, 10A M. S. A. § 127.25, Commission Comment.

Appeal of Lego v. Rolfe, 268 Minn. 483, 129 N. W. 2d 811 (1964) ; In re Certain School Districts, Freeborn County, 246 Minn. 96, 74 N. W. 2d 410 (1956) ; In re Dissolution of Independent School Dist. No. 27, 240 Minn. 257, 60 N. W. 2d 617 (1953). On the principal issue presented, we consider only whether the trial court has conformed to this limited scope of review and whether the evidence reasonably supports its determination. In re Certain School Districts, Freeborn County, *supra*.

In performing our function, we can find no justifiable basis to disturb the findings and determination of the trial court. We cannot say that the trial court was compelled to find that the county board acted arbitrarily in either rejecting or ignoring the appraised valuations of the Nisswa school building and land, or that Pequot Lakes was fraudulently and capriciously denied sufficient assets or oppressively placed in substantial debt while Brainerd received assets greatly in excess of the bonded indebtedness it assumed. The record makes clear that the county board afforded full and fair hearings to the parties; that it knew that during the consolidation proceedings Brainerd did not seek the area which included the buildings; and that it was informed concerning the financial situation of the absorbing districts and Brainerd's insistence that it was unable to pay any dollar claim for receiving Nisswa's real estate, a position not challenged by Pequot Lakes. Clearly, the evidence fails to establish that the county board manifestly abused its discretion.

Pequot Lakes also argues that, since the county board in dividing the assets acted in a quasi-judicial capacity, we should remand and require the board to make findings of fact despite the absence of any statutory requirement of factfinding in consolidation proceedings. While the trial court and this court would have been aided by findings as to the county board's evaluation of Nisswa's assets, we prefer that the legislature consider the stages at which findings should be required in proceedings for

the alteration of school districts, especially where, as here, no motion to remand for findings was made to the trial court.[6]

Affirmed.

MR. JUSTICE TODD, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

---

[6] It may be noted that, while the Education Code and the Minnesota Administrative Procedure Act do not require findings of fact in proceedings by county boards relating to school district alteration, In re Petition of Minneapolis Area Development Corp. 269 Minn. 157, 131 N. W. 2d 29 (1964), to require factfinding in support of a board's division of assets would not appear to impose an unreasonable burden and yet would, as noted in cases where factfinding is statutorily required, surely facilitate judicial review, promote a careful consideration by the county board in resolving a problem essentially based upon ascertainable facts, and protect against judicial usurpation of the board's function. See, e. g., Roseburg Lbr. Co. v. State Tax Comm. 223 Ore. 294, 355 P. 2d 606 (1960). We believe that in a case where the factual basis for the county board's division order is difficult to ascertain from the members of the board, a trial court would, upon a proper motion, be justified in remanding for findings.